669 So.2d 712 (1996)
Servila BROWN, Plaintiff-Appellee,
v.
CADDO CAREER CENTER, Defendant-Appellant.
No. 28111-CA.
Court of Appeal of Louisiana, Second Circuit.
February 28, 1996.
Rehearing Denied March 28, 1996.
*713 James S. Denhollem, Beard & Sutherland, Shreveport, for Appellant.
Richard M. John, Shreveport, for Appellee.
Before HIGHTOWER and WILLIAMS, JJ., and CLARK, J. Pro Tem.
CLARK, Judge Pro Tem.
Defendant, Caddo Parish School Board, appeals a ruling of the Office of Workers' Compensation awarding temporary total disability benefits to claimant, Servila Brown. For the following reasons, we reverse.

FACTS
Claimant injured her knee on October 25, 1990, when she stepped out of the school bus she had been driving for defendant. She drove herself to Schumpert Hospital where she received treatment for her injuries, for which defendant reimbursed her. She continued to work for the school board until sometime at the beginning of 1991. At that time she began receiving sick leave pay through a group insurance policy she had voluntarily elected to participate in through her employment with the school board. She worked on and off during this period, but her knee gradually grew worse.
In May 1991 she was examined by Dr. David Waddell. Based upon his finding that claimant was not disabled from the knee injury but from a degenerative joint disease exacerbated by her obesity, the defendant determined that claimant was not due workers' compensation benefits and informed her of this fact through a letter dated May 10, 1991. In June 1991 she was diagnosed by Dr. J.E. Smith as having "a post-rupture of posterior cruciate ligament and subsequent traumatic arthritis, right knee." The exact date she stopped working was not established at the hearing, but claimant testified it was sometime in April or May of 1991.
On July 8, 1991, claimant began receiving checks from Washington National Insurance under her disability insurance policy. As mentioned above, participation in this group disability plan was voluntary and was elected by claimant in April 1986 through her employment with the school board. Claimant testified she did not understand the distinction between disability benefits, as provided under this insurance plan, and workers' compensation benefits. She testified she believed the checks she was receiving were for workers' compensation, and, therefore, she failed to file this claim until September 14, 1992.
After a hearing on the merits, the WCHO determined that the claim had not prescribed and that claimant had proven she had a developing disability and was due benefits. Defendant appeals.

DISCUSSION
Generally, a claim for workers' compensation benefits prescribes one year after the accident. However, LSA-R.S. 23:1209(A) provides that if the injury does not develop immediately after the accident, the limitation does not take effect until one year after the time the injury develops. All claims are further limited by a two-year prescription period from the date of the accident.
Development of injury actually means development of disability, and disability *714 marks the time from which the employee can no longer perform the duties of his employment in a satisfactory manner. Mottet v. Libbey-Owens-Ford Glass Co., 220 La. 653, 57 So.2d 218 (1952); Glascock v. Georgia-Pacific Corp., 25,677, (La.App. 2d Cir. 3/30/94), 635 So.2d 474; Holcomb v. Bossier City Police Dept., 27,095, (La.App. 2d Cir. 8/25/95) 660 So.2d 199. The injury is considered "developed" when the employee becomes "aware of the significance" of the injury. Collier v. Southern Builders, Inc., 606 So.2d 885 (La.App. 2d Cir.1992); Glascock, supra; Holcomb, supra.
In the current case, even if we assume that claimant's disability is related to the injury that occurred on October 25, 1990, that she suffered from a "developing disability," and that she was not disabled until June 14, 1991, when she was diagnosed by Dr. Smith, her claim was still filed untimely on September 14, 1992. Despite the clear language of the statute allowing a one-year prescriptive period from the time the injury develops, the WCHO apparently misread LSA-R.S. 23:1209(A), interpreting it as providing a two-year prescription period for all developing disabilities.
When a workers' compensation claim to recover benefits has prescribed on its face, the claimant has the burden of showing that prescription has been interrupted in some manner. Lynn v. Berg Mechanical, Inc., 582 So.2d 902 (La.App. 2d Cir.1991). An employer who lulls an injured employee into a false sense of security cannot later interpose a plea of prescription. Foster v. Manville Forest Products Corp., 465 So.2d 920 (La.App.2d Cir.1985). Claimant, in order to show he was lulled into a false sense of security, and thus that the prescription period was interrupted, must show that words, actions or inactions on the part of the employer or insurer induced claimant to withhold suit until the claim had prescribed. Lynn v. Berg Mechanical, Inc., supra.
This court has held that where a claimant shows that during his period of disability, he has received wage continuation payments from or through his employer which could reasonably be construed as compensation benefits or payment in lieu of compensation, the defendant must bear the burden of showing claimant actually understood the nature of the payments or was unreasonable in the construction he placed on the payments. Wesley v. Claiborne Electric Co-op., Inc., 450 So.2d 955 (La.1984); Foster v. Manville Forest Products Corp., supra.
It is well settled that a hearing officer's findings are given great deference and will not be set aside by an appellant court absent a finding of "manifest error" or unless they are "clearly wrong." Rosell v. ESCO, 549 So.2d 840 (La.1989); Gonzales v. Babco Farm, Inc., 535 So.2d 822 (La.App. 2d Cir.), writ denied, 536 So.2d 1200 (La.1988); Patterson v. GNB Battery, Inc., 569 So.2d 640 (La.App. 2d Cir.1990), writ denied, 573 So.2d 1134 (La.1991).
It is claimant's assertion on appeal, as it was at the hearing, that her receipt of disability benefits so soon after being diagnosed by Dr. Smith as disabled, lulled her into a false sense of security and led to her untimely filing of this claim. Although the WCHO in her reasons for judgment reviewed the contentions of both sides, the WCHO made no finding as to this issue, instead relying on an erroneous interpretation of LSA-R.S. 23:1209 to find the claim was timely. Therefore, we are not limited in our appellant review by the manifest error-clearly wrong standard.
The record does not support the assertion of the claimant that she was lulled by the defendant into allowing her claim to prescribe. In fact, the record is replete with evidence that claimant was aware she was not receiving the workers' compensation benefits to which she felt entitled.
Although Dwight Collier, appellant's Director of Auditing and Risk Management, testified he could not recall speaking with claimant, Ms. Brown testified he told her she would not be receiving workers' compensation. Further, a letter was sent to claimant by Gwen White, another employee of the school board, stating that, since Dr. Waddell's report indicated she was suffering from a degenerative arthritic condition, the defendant would not be paying workers' compensation *715 benefits. Attached to a copy of this letter in claimant's file with the school board was a yellow sticky reporting a phone call Ms. White had received from claimant. In this call claimant told Ms. White she had received the letter and had found a doctor who said her knee problem was not degenerative.
In the summer of 1991 she began receiving checks drawn upon Washington National Insurance. Claimant contends she believed these checks to have been workers' compensation benefits, and that Mr. Collier's decision not to pay these benefits had somehow been "overruled." However, the evidence indicated that the checks were clearly drawn upon Washington National, not the school board, and that they even stated they were for disability benefits on the attached stub. The defendant also introduced at trial several claim forms filled out by claimant for disability insurance purposes where she indicated she was not receiving workers' compensation benefits. For example, on July 10, 1991, plaintiff stated in her own handwriting in the box on the form where it asks whether she was receiving workers' compensation benefits, "... I am not git [sic] any thing from S.B."
Besides claimant's self-serving testimony that she did not understand the distinction between workers' compensation benefits and disability benefits, the only allegation that the school board had lulled her into a false sense of security was her testimony regarding a phone conversation she had with Carolyn Waxham, the school board's bookkeeper for the group insurance policy. Claimant testified that Ms. Waxham told her that, with regard to a tardy check, "she had sent it on for my Worker's Comp." However, Ms. Waxham had no connection with workers' compensation claims, dealing strictly with premium collection for the group disability plan, and further testified she had not said this.
Claimant testified she was unaware she had a disability insurance policy. However, evidence at trial showed she had elected to join the group plan, and had paid cash to maintain her policy during the period she was not receiving a paycheck from which her premium could be withheld. Claimant's testimony was further discredited by the actual claim forms she had filled out to receive the disability benefits.
In conclusion, we find that claimant's workers' compensation claim had prescribed on its face. The burden then shifted to claimant to show the prescriptive period had been interrupted. The only evidence put on by claimant was her own self-serving testimony that she did not understand the nature of the checks she was receiving from her insurance policy and that this lulled her into believing she was receiving workers' compensation benefits. Defendant, however, countered this testimony with evidence that she either did understand what the checks from Washington National were for, or that her interpretation of the nature of the checks was unreasonable.
For the above stated reasons the judgment of the WCHO is reversed. Costs are assessed to appellee.
REVERSED.
WILLIAMS, J., concurs in result reached.

APPLICATION FOR REHEARING
Before MARVIN, NORRIS, HIGHTOWER and WILLIAMS, JJ. and CLARK, J. Pro Tem.
Rehearing denied.