771 So.2d 234 (2000)
Ronald C. MILLICAN, Plaintiff-Appellee,
v.
GENERAL MOTORS CORPORATION, Defendant-Appellant.
No. 34,207-WCW.
Court of Appeal of Louisiana, Second Circuit.
November 1, 2000.
Rehearing Denied November 30, 2000.
*235 Hudson, Potts & Bernstein by Brian P. Bowes, Amanda J. Futch, Monroe, Counsel for Appellant.
Wallace, Long & Lyons by Alex S. Lyons, Shreveport, Counsel for Appellee.
Before BROWN, PEATROSS and DREW, JJ.
BROWN, J.,
We granted an application for supervisory review filed by defendant, General Motors Corporation ("GM"), following the denial of an exception of prescription by the workers' compensation judge ("WCJ"). For the reasons set forth below, we affirm.

Facts and Procedural Background
Claimant, Ronald Millican, is employed by GM as a line worker. Millican injured his back in a work-related accident on September 28, 1998. Millican took time off work beginning in November 1998, underwent lumbar disc surgery in January 1999 and returned to his employment in April 1999. During his period of recuperation, Millican received sickness and accident benefits in the amount of $500 per week and most of his medical expenses were paid by GM.
On December 6, 1999, Millican filed a claim with the Office of Workers' Compensation ("OWC"), seeking workers' compensation benefits from his employer. General Motors filed an exception of prescription, noting that on its face, Millican's claim was prescribed under La. R.S. 23:1209. According to Millican, his delay in filing a claim was due to his reliance upon a "Statement of Rights" information sheet he received from the OWC.[1]
A hearing was held on May 15, 2000. In denying the exception, the WCJ first found that none of the theories for interruption or suspension of prescription asserted by claimant's counsel were applicable, then found that prescription was interrupted by Millican's reliance to his detriment upon the "Statement of Rights" form he received from the OWC. General Motors filed an application for supervisory writs which was granted by this court. According to GM, the WCJ erred in finding that the claimant's misinterpretation of the information sheet he received from the OWC served to interrupt the prescriptive period for the filing of his claim. General Motors also urges, however, that the WCJ correctly found that none of the jurisprudential exceptions to prescription were applicable.

Discussion
In keeping with the general intent of the Workers' Compensation Act, the time limits for institution of a claim for benefits have been liberally interpreted over the years. Glascock v. Georgia-Pacific Corporation, 25,677 (La.App.2d Cir.03/30/94), 635 So.2d 474; Wesley v. Claiborne Electric Co-op, Inc., 446 So.2d 857 (La.App. 2d Cir.1984), writ denied, 450 So.2d 955 (La. 1984); H. Alston Johnson, 14 Louisiana Civil Law Treatise: Workers' Compensation *236 Law and Practice, § 384 at p. 345 (3d Ed.1994). As applicable to the present case, La. R.S. 23:1209(A) provides that the claim of an injured employee for weekly benefits is not prescribed if filed within one year after the accident or one year after the last payment of compensation. Smith v. Fruehauf Trailer Operations, 27,864 (La.App.2d Cir.01/24/96), 666 So.2d 1246; Lynn v. Berg Mechanical, Inc., 582 So.2d 902 (La.App. 2d Cir.1991).
The purpose of the requirement that suit be brought by a claimant within one year after his accident is three-fold: to enable the employer to determine when his potential liability would cease; to prevent, as a matter of public policy, suits based on stale claims where evidence might be destroyed or difficult to produce; and, to fix a statute of repose giving rise to a conclusive presumption of waiver of his claim on the part of an employee who fails to bring suit within the fixed period. Clark v. Mrs. Fields Cookies, 97-0397 (La.01/21/98), 707 So.2d 17; Lunkin v. Triangle Farms, Inc., 208 La. 538, 23 So.2d 209 (1945); Johnson, Id. at p. 361.
A claimant may survive a plea of prescription by showing that his petition is timely under any of the provisions of La. R.S. 23:1209. Even if a claimant is unable to fit his claim within the parameters of that statute, he may still be able to avoid prescription if he can establish that his case falls under one of the refinements or exceptions developed in the jurisprudence. Johnson, Id. at p. 349. As with any prescriptive period, prescription on workers' compensation claims may be interrupted or suspended. Krieg v. Krieg Brothers Terrazzo Co., Inc., 93-1065 (La.App. 3d Cir.09/28/94), 645 So.2d 661, writ denied, 95-0152 (La.03/30/95), 651 So.2d 837; Latino v. Binswanger Glass Company, 532 So.2d 960 (La.App. 5th Cir.1988).
When a workers' compensation claim has prescribed on its face, the claimant has the burden of showing that prescription has been interrupted or suspended in some manner. Causby v. Perque Floor Covering, 97-1235 (La.01/21/98), 707 So.2d 23; Brown v. Caddo Career Center, 28,111 (La.App.2d Cir.02/08/96), 669 So.2d 712, writ denied, 96-1042 (La.05/31/96), 674 So.2d 262; Smith, supra; Lynn, supra. La. C.C. art. 3467 provides that prescription runs against all persons unless they are included in some exception established by law. In accord with the purpose behind the workers' compensation act, these requirements are interpreted liberally in favor of maintaining rather than barring the action. Glascock, supra; Howard v. Trelles, 95-0227 (La.App. 1st Cir.02/23/96), 669 So.2d 605, writ denied, 96-0712 (La.05/03/96), 672 So.2d 690.
In the instant case, the WCJ found that none of the jurisprudential exceptions applied, but that prescription was "interrupted" based upon Millican's reliance upon the "Statement of Rights" form he received from the OWC. While we agree with the WCJ's result, we find her analysis to be flawed.
One of the jurisprudential exceptions is estoppel on the basis that the employee was "lulled into a false sense of security" by the employer/insurer and thus induced to forego the filing of his claim until the prescriptive period had expired. Landry v. Ferguson, 279 So.2d 185 (La.1973); Wesley, supra; Blanchard v. Tulane Medical Center, 97-1111 (La.App. 5th Cir.03/11/98), 708 So.2d 1232; Siemssen v. Manpower Temporary Services, 95-80 (La.App. 5th Cir.05/30/95), 656 So.2d 1115; Johnson, Id. at p. 371.
In order for this exception to apply, it is not necessary that the claimant show that the employer or insurer intentionally misled him as to the nature of the benefits being paid or the time period for asserting his claim. The claimant must establish that words, action or inaction on the part of the employer/insurer induced him to withhold suit until the time for prescription had passed. Brown, supra; Lynn, supra; Wesley, supra. If the claimant *237 prevails on this point, the employer or insurer is estopped from raising this as a defense. Brown, supra; Wesley, supra.
Turning to the facts of the instant case, General Motors is a large corporation with thousands of unionized employees in its United States factories and plants. In accordance with a written collective bargaining agreement, GM provides sickness and accident benefits to its employees who become "wholly and continuously disabled" from performing their employment duties. This same agreement further states that if the injured employee has an "occupational disability" which entitles him to workers' compensation benefits, then his sickness and accident benefits are to be reduced by the entire amount received under workers' compensation. In Louisiana, the amount that is received by an employee in sickness and accident benefits is $500 per week, which amount exceeds the maximum weekly amount that the injured worker would be entitled to under Louisiana workers' compensation law.
To process and administer claims made by its employees, GM has established a "General Motors National Benefit Center"; this center administers all claims for benefits: workers' compensation claims, as well as those for sickness/accident and medical expenses. Upon filing a claim, a worker is assigned an adjuster based upon an alphabetic system, i.e., according to the first letter of his surname. At that time, the employee must submit all pertinent information concerning the accident and disability to his adjuster, who then begins issuing payments. As noted above, since the weekly amount payable under the sickness and accident program always exceeds the amount payable under Louisiana workers' compensation law, an injured Louisiana employee receives $500 per week under the sickness and accident program.
The same adjuster also determines whether a claim is compensable under Louisiana workers' compensation law. Prior to this determination, the adjuster requires that an injured worker sign a written agreement which contractually obligates the employee to repay General Motors any money that GM may ultimately decide that the employee is entitled to receive under workers' compensation. Also of importance is that the amount of the weekly benefit received by the injured worker is set at $500, regardless of whether the accident or injury is found by the adjuster to be compensable under Louisiana workers' compensation law. If the adjuster determines that the worker is entitled to workers' compensation benefits, what occurs is basically an accounting adjustment; GM's workers' compensation program "repays" the amount of the weekly benefit found owing to its sickness and accident program.
Millican was injured on September 28, 1998. He did not begin missing work, however, until November 16, 1998. After undergoing lumbar disc surgery on January 11, 1999, Millican returned to work at General Motors on April 3, 1999.
Millican contacted the National Benefit Center in November 1998. The adjuster he was assigned for his claims for sickness/accident benefits, workers' compensation benefits and medical expenses was Brenda McIntosh. Millican testified that Ms. McIntosh related to him that the most he would receive under either the sickness/accident plan or workers' compensation program was $500 per week. She also informed him that prior to receiving any benefits, he would have to sign a reimbursement agreement.
Millican submitted all of the requested information and documentation to Ms. McIntosh. After the adjuster confirmed that Millican was unable to return to work due to his back injury, he began receiving $500 per week from the National Benefit Center.
On June 2, 1999, two months after his return to work, Millican's workers' compensation claim was denied by Ms. McIntosh. The letter of denial did not explain the basis for the rejection of his claim for workers' compensation benefits; instead, *238 Millican was urged to call Ms. McIntosh should he have any questions.
Millican testified that he telephoned the adjuster on numerous occasions. During one such conversation, Ms. McIntosh informed him that he had to "appeal" her decision to the OWC. Furthermore, since he had submitted documentation and information to Ms. McIntosh and had received disability benefits as well as medical expenses, Millican believed that he had already filed a formal claim. The adjuster fostered and encouraged this belief when she informed Millican that he had to "appeal" her decision. Millican thereafter requested information from the OWC and, based upon the "Statement of Rights" form he received from that office, believed that he had plenty of time to file his "appeal."
While we are cognizant of the supreme court's holding in Causby, supra, we find the facts of the instant case to be distinguishable. In Causby, the adjuster informed the injured worker (who had been receiving compensation benefits) that he was entitled to no further benefits. The supreme court held that the employee, rather than being lulled into a false sense of security, was instead put on notice that he needed to hire an attorney and file suit within the established time periods. Causby, 707 So.2d at 27.
In the case sub judice, General Motors set up an integrated disability/activity system which administers all claims of workers seeking benefits, whether those claims be for accident/sickness and/or workers' compensation. Under this system, an injured employee receives $500 per week, regardless of whether his claim is ultimately determined to be one for workers' compensation rather than sickness/accident benefits. To compound matters, Millican's assigned adjuster, in denying his entitlement to workers' compensation benefits, made affirmative statements which led him to believe that he had already instituted a formal claim for compensation benefits and that he was simply filing an "appeal" with the OWC.
Without addressing the issue of whether the "Statement of Rights" information sheet provided by the OWC is in fact misleading and subject to misinterpretation by potential claimants, we note that, unlike the injured worker in Causby, supra, Millican did not "sit on his rights indefinitely." Instead, as soon as Ms. McIntosh informed him of his need to "appeal" her denial with the OWC, Millican contacted that office and requested information to begin that process.
Under these particular facts and circumstances, we find that General Motors is estopped from disputing the timeliness of Millican's claim.

Conclusion
For the reasons set forth above, the judgment of the workers' compensation judge is AFFIRMED. Costs are assessed to defendant-appellee, General Motors Corporation.
AFFIRMED.

APPLICATION FOR REHEARING
Before BROWN, GASKINS, PEATROSS and KOSTELKA, JJ.
Rehearing denied.
NOTES
[1] The "Statement of Rights" form provides in part:

Claims for disability benefits, often called weekly benefits, generally must be filed within one year of the date of the accident causing the injury. If your employer or their insurer has paid disability benefits, you may still assert a claim for temporary total, permanent total, or permanent partial disability if you do so within one year after the last payment of disability.