851 So.2d 1210 (2003)
Sandra SCOTT
v.
WALMART STORES, INC.
No. 2003-CA-0104.
Court of Appeal of Louisiana, Fourth Circuit.
July 2, 2003.
*1211 Deidre K. Peterson, Peterson Law Firm, New Orleans, LA, for Plaintiff/Appellee.
Frank A. Flynn, Allen & Gooch, Lafayette, LA, for Defendant/Appellant.
(Court composed of Judge PATRICIA RIVET MURRAY, Judge JAMES F. McKAY, III, Judge DENNIS R. BAGNERIS, SR.).
PATRICIA RIVET MURRAY, Judge.
This is a workers' compensation case. Wal-Mart Stores, Inc. appeals the award of workers' compensation benefits, penalties, and attorney's fees to its former employee, Sandra Scott. For the reasons that follow we reverse.

FACTS AND PROCEEDINGS BELOW
This case arises from a claim for workers' compensation benefits filed on July 8, 1999, by Mrs. Scott against Wal-Mart for carpal tunnel injuries that allegedly occurred as a result of her duties as a cashier. Wal-Mart answered by denying Mrs. Scott's allegations, claiming that there was no medical connexity between her injury and her duties as a cashier, thus, she was not injured in the course and scope of her employment. Before trial, Mrs. Scott discharged her original attorney and obtained new counsel. Following the trial, Wal-Mart filed an exception of prescription asserting that the claim had prescribed pursuant to La. R.S. 23:1209.
In June 1996, Mrs. Scott began working as a cashier. Shortly thereafter, she began complaining of bi-lateral wrist pains and began using a wrist brace to mitigate her discomfort. In January 1997, Mrs. *1212 Scott took a leave of absence from Wal-Mart because of what she described as a mental condition of depression based on stress from work, but no claim for workers' compensation was made. The leave of absence prompted her to submit an application for short-term disability with her personal disability carrier, ITT Hartford ("ITT"), who accepted the claim and granted benefits until she returned to work in September 1997.
Mrs. Scott first sought treatment for her ongoing wrist pain in 1997. Her efforts culminated in a diagnosis of carpal tunnel syndrome in April 1998 from EMG and nerve conduction tests showing nerve damage in both wrists. Because of her wrist condition, Mrs. Scott took another leave of absence from Wal-Mart on July 1, 1998, and underwent surgery on July 8, 1998. She once again applied for short-term disability benefits from ITT who accepted the claim and granted benefits for six months. When Mrs. Scott did not return to Wal-Mart from her leave of absence on November 1, 1998, as scheduled, her employment was terminated.
Perhaps the most pertinent occurrences during this time period were the communications between the Wal-Mart personnel manager and Mrs. Scott. There were at least two meetings that the record indicates occurred. The first was just prior to June 25, 1998, in preparation of Mrs. Scott taking her leave of absence due to carpal tunnel problems. At this meeting, the personnel manager requested a doctor's statement for Wal-Mart's file. With regard to whether Mrs. Scott told the manager before taking her second leave of absence that there was a particular activity at work that brought pain to the wrist, Mrs. Scott's testified at trial that, "What I did, I talked to [the manager]. I talked to a few other people and expressed to them what my doctor said. There are a lot of things I did not do because my full intention was to come back to the job." Mrs. Scott also testified that following her diagnosis she informed Wal-Mart that her doctor suggested cashier work could cause carpal tunnel nerve damage in a short amount of time. In fact, the doctor's statement provided in response to the manager's request has no indication as to whether or not the diagnosis of carpal tunnel was work related.
The second meeting apparently occurred in August or September 1998, a few months after the first surgery. By this time, Mrs. Scott realized, based on information from an unknown source, that she was not receiving workers' compensation benefits, but rather short-term disability benefits. In light of this realization, she called the personnel manager and, in her own words, "requestedasked her about the workers' compensation," and was provided with an explanation of the difference between the two. Mrs. Scott testified that she responded to the explanation by telling the manager that she "needed to get that." Mrs. Scott provided contradictory testimony as to whether during the second meeting the personnel manager was aware (or was made aware) that Mrs. Scott was pursuing a workers' compensation claim as a result of injuries obtained from her cashier duties. At one point in her testimony, Mrs. Scott states that the manager informed her that the first step to begin a claim is to obtain an "applying card." Yet, in response to another line of questioning, she states that the conversation was limited to a discussion of the differences between workers' compensation and short-term disability.
In December 1998, a few months after her second discussion with the personnel manager, Mrs. Scott had a second wrist surgery and obtained counsel to "take care" of her workers' compensation claim. Wal-Mart was first formally notified of *1213 Mrs. Scott's alleged work related injury when she filed the claim more than six months later on July 8, 1999, one year and one week from her last day of work at Wal-Mart. At trial in January 2002, only two witnesses testified: Mrs. Scott and her husband. Based on the testimony, evidence introduced, and applicable law, the trial court found that:
 Mrs. Scott's carpal tunnel syndrome was a direct result of her employment; and
 She was entitled to temporary total workers' compensation indemnity benefits from the time the injury became disabling requiring surgery until she can earn at least 90% of her pre-injury wages; and
 The exception to prescription was denied as Wal-Mart was aware of Mrs. Scott's injury and unilaterally placed her on its own disability carrier instead of paying her worker's compensation benefits to which she was entitled; and
 Wal-Mart failed to controvert Mrs. Scott's entitlement to workers' compensation benefits and is thus liable for penalties and attorney's fees.
From that judgment, Wal-Mart appeals.

DISCUSSION
On appeal, Wal-Mart alleges that the trial court committed manifest error in (i) rejecting its exception to prescription under La. R.S. 23:1209, (ii) finding that Mrs. Scott carried the requisite burden of proof regarding medical connexity between her injury and her duties as a cashier, and (iii) finding that Wal-Mart was arbitrary and capricious where there were substantial and legitimate disputes over the extent of work related injury and/or work related disability, if any.
As the claim was filed one year and one week after Mrs. Scott's last date of employment, Wal-Mart contends that the applicable prescription period had run, and that the claim was thus barred. It also asserts that no interruption of prescription occurred. More particularly, Wal-Mart asserts that the trial court abused its discretion in finding that there was any unilateral action amounting to interruption of prescription on the part of Wal-Mart vis-à-vis Mrs. Scott's personal short-term disability carrier, ITT, and that Wal-Mart did not induce Mrs. Scott into withholding filing her workers compensation claim until the prescriptive period had run.
Mrs. Scott's original petition (OWC Form 1008) states the date of her injury as July 8, 1998, the date of her first surgery, which was exactly one year prior to the filing of her claim. Even so, she argues that prescription had been interrupted due to the inaction of Wal-Mart after workers' compensation benefits were discussed at a meeting between the personnel manager and Mrs. Scott during the respective prescriptive period. Additionally, the trial court's judgment denying the exception of prescription opines that prescription had been interrupted not only because Wal-Mart was aware of Mrs. Scott's injury before prescription had run, but also that Wal-Mart had unilaterally put her on disability payments through its disability carrier instead of paying workers' compensation benefits.

PRESCRIPTION
In keeping with the general intent of the Workers' Compensation Act, the jurisprudence has liberally construed the time limits for institution of a claim for benefits. Millican v. General Motors Corp., 34,207, p. 1 (La.App. 2 Cir. 11/1/00), 771 So.2d 234, 235, writ denied, XXXX-XXXX (La.3/23/01), 788 So.2d 426; See, e.g., Glascock v. Georgia-Pacific Corp., 25,677 (La. App. 2 Cir. 03/30/94), 635 So.2d 474, 479; Wesley v. Claiborne Elec. Co-op., Inc., 446 *1214 So.2d 857 (La.App. 2 Cir.1984); See generally, 14 H. Alston Johnson, Louisiana Civil Law Treatise: Workers' Compensation Law and Practice § 384 (3d ed.1994). Thus, prescription statutes, including La. R.S. 23:1209(A), are construed in favor of maintaining rather than barring actions. See, e.g., Taylor v. Liberty Mut. Ins. Co., 579 So.2d 443, 446 (La.1991); Howard v. Trelles, 95-0227, p. 4 (La.App. 1 Cir.02/23/96), 669 So.2d 605, 607. As with any prescriptive period, prescription on workers' compensation claims may be interrupted or suspended. Millican, 34,207 at p. 3, 771 So.2d at 236; Krieg v. Krieg Bros. Terrazzo Co., Inc., 93-1065 at p. 3 (La.App. 3 Cir. 09/28/94), 645 So.2d 661, 664; Latino v. Binswanger Glass Co., 532 So.2d 960, 962 (La.App. 5 Cir.1988).
Mrs. Scott seeks recovery based on an alleged injury dated July 8, 1998, the date of her first surgery. Her claim was filed on July 8, 1999, one year from the date of her surgery. If the applicable prescription period began running anytime before July 8, 1998, then her claim prescribed unless the prescription period had been interrupted or suspended.
In this instance, the applicable prescription period is proscribed by the final subpart of La. R.S. 23:1209(A) which provides in pertinent part that "when the injury does not result at the time of, or develop immediately after the accident, the limitation [i.e., the barring of claims] shall not take effect until the expiration of one year from the time the injury develops." La. R.S. 23:1209 A.[1] Where there is no accident or specific occurrence to which the employee's injury can be attributed, but rather a progression and recurrent manifestation of illness or disability from latent causes which may be attributable in whole or in part to work related incidents, the time of development of the injury for purposes of determining the prescriptive date for the workers' compensation claim is the date of termination of employment, i.e., the date when the employee finally had to give in to his disability and quit work. Burns v. W.H. Patterson Constr. Co., 310 So.2d 675, 677 (La. App. 1 Cir.1975). An injury may also be considered developed when the employee becomes aware of the significance of the injury, which is typically the time it becomes clear that the employee can no longer perform her duties in a satisfactory manner. See, e.g., Brown v. Caddo Career Center, 28,111, p. 2 (La.App. 2 Cir. 2/28/96), 669 So.2d 712, 713-714; Holcomb v. Bossier City Police Dept., 27,095, p. 3 (La.App. 2 Cir. 8/25/95), 660 So.2d 199, 202; Smith v. Fruehauf Trailer Operations, 27,864, p. 4 (La.App. 2 Cir. 1/24/96), 666 So.2d 1246, 1249. Similarly, the date of medical diagnosis may mark the beginning of the prescriptive period when a true diagnosis notifies a previously unaware injured employee of a disabling condition from a work related accident that *1215 could give rise to a workers' compensation claim and the peremptive period beginning the date of the accident has not already run. See generally Johnson, supra § 384.
Surely, Mrs. Scott was aware of the significance of her injury before her first surgery date in that by then she had a medical diagnosis, a scheduled surgery, a scheduled leave of absence, and an ongoing pain for close to two years. Given the considerations above regarding the interpretation of when an "injury develops" and the commencement of the corresponding prescriptive period, her claim had prescribed no later than July 1, 1999, one week before the claim was filed, and one year after Mrs. Scott's last day at work for Wal-Mart. Therefore, applying applicable law to the present facts, the claim is barred by La. R.S. 23:1209(A) unless interruption or suspension of prescription occurred.
When interruption occurs, prescription begins anew from the date of interruption. La. C.C. Art. 3466. Mrs. Scott asserts that Wal-Mart's inaction after workers' compensation was requested in August or September of 1998 interrupted the prescriptive period by lulling her into a false sense of security and thereby inducing her to withhold filing a suit. Mrs. Scott's assertion is one of many jurisprudentially developed ways to interrupt prescription thereby preventing an employer from challenging the timeliness of a claim. See Landry v. Ferguson, 279 So.2d 185 (La.1973); Blanchard v. Tulane Medical Center, 97-1111 (La.App. 5 Cir. 3/11/98), 708 So.2d 1232; Siemssen v. Manpower Temporary Services, 95-80 (La.App. 5 Cir. 5/30/95), 656 So.2d 1115; Johnson, supra § 384.
In order for prescription to be interrupted in this manner, it is not necessary for a plaintiff to show that the employer intentionally misled her as to the nature of the benefits being paid or the time period available for asserting her claim. Millican, 34,207 at p. 3, 771 So.2d at 236; Price v. Gas and Well Operating Service, 267 So.2d 598 (La.App. 3 Cir.1972). However, she must establish that words, action, or inaction induced her to withhold suit until the time for prescription had passed. Millican, 34,207 at p. 3, 771 So.2d at 236; Brown, 28,111 at p. 2, 669 So.2d at 714; Lynn v. Berg Mechanical, Inc., 582 So.2d 902 (La.App. 2 Cir.1991).
In the case at hand, Mrs. Scott relies primarily on two facts to support her claim that there was an interruption of prescription, namely: that Wal-Mart gave no response to her request for workers' compensation, and that Wal-Mart failed to report her carpal tunnel injury to the Office of Workers' Compensation. In order for Wal-Mart's failure to respond to interrupt prescription, Mrs. Scott must show that by doing so they lulled her into a false sense of security and induced her to withhold suit until after the prescriptive period had run. Based on the facts of the case, it seems nothing of the sort occurred. It is clear from her testimony that she was aware she was not receiving workers' compensation benefits before her second meeting with the personnel manager. She testified that it was that realization that induced her to call the manager in the first place. During the meeting, while Mrs. Scott may have been vaguely requested workers' compensation, the record shows that the manager made no representations about the nature of the claim or its viability.
In Millican, supra, interruption was found to have occurred because Mr. Millican believed he had filed a formal claim (though he had not) and that belief was fostered and encouraged by his employer's representative telling him to "appeal" her decision denying him benefits. Thus, in Millican, affirmative statements were *1216 made which lulled the plaintiff into a false sense of security until after his claim had prescribed.
This case is readily distinguishable. Mrs. Scott was aware of the nature of her payments, i.e., that they were not workers' compensation benefits, well within the prescriptive period. Like the plaintiff in the La. Supreme Court's decision in Causby v. Perque Floor Covering, 97-1235 (La.01/21/98), 707 So.2d 23, Mrs. Scott, rather than being lulled in to a false sense of security, was put on notice that she needed to hire an attorney and to file suit within the established prescriptive periods. That the notice was heeded is evidenced by the fact that Mrs. Scott did in fact hire an attorney some six months before her claim would have prescribed to "take care" of her workers' compensation claim.
As to Mrs. Scott's argument that Wal-Mart did not report her work related injury in accordance with La. R.S. 23:1306 and therefore her claim should not be dismissed on prescription, the record is extremely vague as to whether Mrs. Scott ever even informed Wal-Mart that she was injured in the course and scope of her employment, notwithstanding the fact that she may have vaguely requested workers' compensation. Furthermore, in this case, the fact no injury was reported did not inure to the benefit of Wal-Mart to the extent it did to the defendant in Roy v. Ruth's Chris Steak House, Inc., 525 So.2d 630 (La.App. 3 Cir.1988) in which prescription was found to have been interrupted because the defendant's noncompliance with La R.S. 23:1306 allowed prescription to run to the detriment of the plaintiff. The fact that no injury was reported did not prejudice Mrs. Smith, who well within the prescriptive period hired an attorney in order to take care of her workers compensation claim. Unfortunately, the attorney she chose delayed filing suit until after prescription had run.
During oral argument before this court, Mrs. Scott's current counsel requested we resort to equity to consider Mrs. Scott's claim as timely. While this court has great sympathy for Mrs. Scott's predicament, the law is clear and we cannot penalize Wal Mart for her former attorney's failure to protect her rights.

DECREE
Because Mrs. Scott's claim for workers compensation benefits is prescribed, the judgment awarding benefits and penalties and attorneys fees to her is reversed, with each side to bear its own costs.
REVERSED.
NOTES
[1] The first subsection of La. R.S. 23:1209(A) bars a claim unless filed within one year of the accident. La. R.S. 23:1021 defines "accident" as "an unexpected or unforeseen actual, identifiable precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration." Thus, the "accident" as contemplated in the first subpart of La. R.S. 23:1209(A) is one where the injury is immediately manifested.

Here, the surgery had been scheduled for months in advance on an injury that had been previously diagnosed as carpal tunnel syndrome. Even with the most liberal application of these rules, the wrist surgery on July 8, 1998 was not an unexpected or unforeseen event, nor was it sudden or violent, and it certainly did not produce Mrs. Scott's previously diagnosed carpal tunnel syndrome. Hence, the surgery was not an "accident" where an injury was immediately manifested and, therefore, it did not commence the running of prescription.