JjPEATROSS, J.
Richard D. Rambin (“Mr.Rambin”) was an employee of Shreveport Refrigeration, Inc. on October 30, 1985, when he was involved in an automobile accident while in the scope of his employment. Mr. Rambin filed suit against the tortfeasor and others the following year.[1] Shreveport Refrigeration, Inc. was self-insured for workers’ compensation claims through Louisiana Retailer Association Self Insurers Fund (the two entities are collectively referred to herein as “LRA”). LRA began paying indemnity benefits to Mr. Rambin as a result of his accident. Shortly thereafter, LRA filed a Petition of Intervention in the tort suit asserting a right to have preferential payment out of any settlement or judgment that Mr. Rambin obtained through his suit. During the litigation, the parties entered into a Joint Motion for Partial Dismissal of the tortfeasor’s insurance company, Government Employees Insurance Company, reserving rights against the remaining defendants.
At the time of the accident, employers’ or workers’ compensation insurers were entitled under Louisiana law to a credit for future compensation benefits up to the amount of future lost earnings awarded in a judgment or itemized in a settlement.[2] The parties to the case settled and signed a Stipulation on March 20, 1989, that stated, inter alia:
*1131 It is further stipulated and agreed to by and between the parties that [LRA] shall have a credit against future payments of workmen’s compensation benefits for a period of fourteen (14) years. Additionally, RICHARD DILL RAM-BIN agrees that he will bear the expenses of the first $1000.00 in medical | ?,expenses that he might incur in the future as a result of any medical expenses incurred resulting directly from treatment for the injuries sustained in the accident of October 30, 1985. Any future medical expenses in excess of the $1000.00 aggregate amount shall be at the expense of [LRA].
The amount that LRA had already paid in benefits was $49,174.09 and the settlement amount attributed to future lost income was $184,674.08, or approximately 14 years of compensation benefits at a maximum rate of $254 per week.
On January 30, 2004, Mr. Rambin filed a new petition (Form 1008) against LRA seeking reimbursement of wages, attorney fees and penalties when LRA refused to continue paying benefits after March 20, 2003. LRA responded with an Exception of Prescription stating that they had paid no benefits since the Stipulation was executed. The WCJ sustained the Exception of LRA, dismissing Mr. .Rambin’s claims with prejudice. From this ruling, Mr. Rambin appeals. For the reasons set forth herein, we reverse and remand.

DISCUSSION

Issue Number One (Verbatim): The Trial Court Erred in Sustaining the Defendant’s Exception of Prescription.
Mr. Rambin argues that prescription was interrupted on March 20, 2003, the date of the last credit taken by LRA. Accordingly, he asserts that his Form 1008 was timely filed ■ on January. 30,- 2004, as that was within the one-year prescriptive period. LRA argues, to the contrary, that the WCJ was correct in finding that Mr. Rambin’s claim for workers’ compensation benefits had prescribed.
Both parties cite La. R.S. 23:1209(A), which states:
|sIn case of personal injury, including death resulting therefrom, all claims for payments shall be forever barred unless within one year after the accident or death the parties have agreed upon the payments to be made under this Chapter, or unless within one year after the accident a formal claim has been filed.... Where such payments have been made in any case, the limitation shall not take effect until the expiration of one year from the time of making the last payment, except that in cases of benefits payable pursuant to R.S. 23:1221(3) this limitation shall not take effect until three years from the time of making the last payment of benefits pursuant to R.S. 23:1221(1), (2), (3), or (4). Also, when the injury does not result at the time of, or develop immediately after the accident, the limitation shall not take effect until expiration of one year from the time the injury develops, but in all such cases the claim for payment shall be forever barred unless the proceedings have been begun within two years from the date of the accident.
Mr. Rambin argues that the “parties agreed upon payments to be made” and that LRA was to receive a credit each week for the 14-year period. To the contrary, LRA argues that the Stipulation was not an agreement whereby it would pay Mr. Rambin anything in the future, but, rather, simply recognized LRA’s credit as provided by statute. LRA further points to La. R.S. 23:1209(C), which states that the prescriptive period is one year *1132 from the date of the accident or three years from the date of the last payment.
Mr. Rambin cites Lester v. Southern Cas. Ins. Co., 466 So.2d 25 (La.1985), wherein the supreme court stated that the provisions of workers’ compensation laws are to be interpreted liberally in favor of the worker in order to effectuate their purpose of relieving workers of the economic burden of work-connected injuries by diffusing the cost on channels of commerce. Similarly, he points to Millican v. General Motors Corp., 34,207 (La.App.2d Cir.11/1/00), 771 So.2d 234, writ denied, 01-0001 (La.3/23/03), 788 So.2d 426, wherein this court stated that prescription | requirements are to be interpreted liberally in favor of maintaining, rather than barring, the workers’ compensation claims.
LRA replies by citing Jonise v. Bologna Bros., 01-3230 (La.6/21/02), 820 So.2d 460, stating that, when a suit has prescribed on its face, as it argues is the case here, the claimant has the burden of proving that prescription was suspended or interrupted in some manner. It argues that Mr. Ram-bin failed to establish any form of suspension or interruption in this case and that the prescriptive periods for his claim have long since expired. LRA states that its credit has “nothing whatsoever to do with the interruption of prescription.” It contends that the record does not show any indication that the Stipulation was ambiguous or that another justification exists for considering parol evidence regarding its meaning.
Mr. Rambin further argues that the Stipulation which the parties entered into was a valid contract “to facilitate a resolution of the matter at that time.” In support of his argument, he cites Lawrence v. Terral Seed, Inc., 35,019 (La.App.2d Cir.9/26/01), 796 So.2d 115, writ denied, 01-3134 (La.2/11/02), 808 So.2d 341, wherein this court explained:
A cardinal rule for the interpretation of a contract is determining the common intent of the parties. To determine the parties’ intent, courts must first look to the words and provisions of the contract. When they are clear and explicit, no further interpretation may be made in search of the parties’ intent. Even when the language of the contract is clear and explicit, courts should refrain from construing the contract in such a manner as to lead to absurd consequences. '
The words of a contract must be given their generally prevailing meaning. Words susceptible of different meanings must be interpreted as having the meaning that best conforms to the object of the contract. Each provision in a contract must be interpreted in light of the other provisions so that each is Rgiven the meaning suggested by the contract as a whole. A doubtful provision must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties. (Citations omitted.) ■
He asserts that LRA is acting contrary to the intent of the Stipulation of the parties by contending that they have made no payments since March 20,1989. He points out that, after the Stipulation was executed, LRA received a weekly credit of $254 for the benefit it would have otherwise been obligated to pay him. The last credit LRA was entitled to take was on March 20, 2003. Mr. Rambin further states that, had he filed a’ claim before March' 20, 2003, LRA would have responded with an exception of prematurity. In addition', he notes that there was “no judicial approved settlement of [his] workers’ compensation claim, as is required by law” and that LRA was in error by believing that any further plea *1133 would be prescribed three years after the Stipulation was executed.
LRA responds that no benefits or payments of any sort have been paid since the Stipulation was executed on March 20, 1989; and, therefore, more than three years have passed since the date of the accident and the date of the last payment of indemnity expenses and medical benefits. LRA further alleges that it paid Mr. Rambin $49,174.07 in workers’ compensation benefits, more than half of which represented medical expenses, and all of which accrued prior to the execution of the Stipulation on March 20, 1989. It argues that nothing has happened since that date (no further payments, agreements, conduct or similar actions) that could be construed as interrupting prescription.
IfiMr. Rambin further argues that LRA’s interpretation of the Stipulation opens the door for potential fraud. Under his theory, employers and workers’ compensation insurers could encourage claimants to settle their third-party claims for an amount sufficient to give the obligor a three-year credit, and, when the credit ran out, could assert a defense of prescription. LRA responds that Mr. Rambin was adequately represented by experienced counsel through each stage of this litigation. Accordingly, it argues that, if his counsel intended the Stipulation to function as an interruption of prescription, he could and should have provided as much in the document; however, no such action was taken.
LRA cites La. C.C. art. 3464, stating:
Prescription is interrupted when one acknowledges the right of the person against whom he had commenced to prescribe.
LRA points to Lima v. Schmidt, 595 So.2d 624 (La.1992), in which the court stated that an acknowledgment is the creditor’s right or obligation that halts the progress of prescription before it has run its course. The essence of acknowledgment is not its form, but the debtor’s recognition of the creditor’s right to the debt claimed by him. Lima, supra. LRA further cites Bolden v. Terrebonne Parish School Board, 98-1425 (La.App. 1st Cir.6/25/99), 739 So.2d 360, for the proposition that, once a claim is settled, even with a reservation of rights for future benefits, prescription begins to run anew from the date of dismissal. In summary, LRA argues that prescription began to run anew on March 20, 1989, the date of the Stipulation; and, if Mr. Rambin wished to establish further action in this 17case, he should have done so within the delays set forth in La. R.S. 23:1209(A) and (C). We disagree.
The case sub judice centers around the language in the Stipulation, which states:
It is further stipulated and agreed to by and between the parties that [LRA] shall have a credit against future payments of workmen’s compensation benefits for a period of fourteen (H) years.... (Emphasis ours.)
Similarly, the applicable civil code provision, Article 3464, states that prescription interrupts when one acknowledges the right of the person against whom he had commenced to prescribe.
We conclude that , the language of the Stipulation contains an acknowledgment by LRA of Mr. Rambin’s right. It follows that, per Civil Code article 3464 and the language in the Stipulation to which the parties agreed, LRA recognized that each weekly credit it took equated to an interruption of prescription, the last of which occurred on March 30, 2003.
The wording of this Stipulation, particularly the wording recognizing a “credit,” indicates an acknowledgment of a debt. In order to have a “credit,” a debt must exist. Given the language of 23:1209(A) *1134 and the requirement that'we view workers’ compensation rules liberally and in favor of the worker under Lester, supra, and, Mil-lican, supra, and in the face of the aforementioned jurisprudence, we hold that prescription was interrupted with each applied monthly credit, the last of which was taken on March 20, |s2003.[3] Accordingly, Mr. Rambin’s suit of January 30, 2004, was timely filed.
Furthermore, again, the record indicates that both parties agreed that LRA would not be required to begin payments to Mr. Rambin until the 14-year period expired.[4] In Millican, supra, this court held that one of the | ^jurisprudential exceptions to *1135 prescriptions in workers’ compensation actions is estoppel, if the employee/claimant was “lulled into a false sense of security” by the employer/insurer and, thus, was induced to forego the filing of a claim until after the applicable prescriptive-period had tolled. We further stated that it is not necessary for a claimant to prove that he/she was intentionally “lulled into a false sense of security” by the employer/insurer; but, rather, the claimant must establish that words, actions or inaction by the employer/insurer induced him to withhold filing suit. For these reasons, we reverse the trial court’s decision.

CONCLUSION

For the reasons set forth herein, the judgment of the trial court sustaining the Exception of Prescription of Defendant/Appellees, Shreveport Refrigeration, Inc. and Louisiana Retailers Association Self Insurers Fund, is reversed and the matter is remanded. Costs of this appeal are assessed to Shreveport Refrigeration, Inc. and Louisiana Retailers Association Self Insurers Fund.
REVERSED AND REMANDED.
CARAWAY, J., concurs with written reasons.

. Richard Dill Rambin, et. ux v. Government Employees Insurance Company, et al, No. 326,678, First Judicial District Court, Caddo Parish, Louisiana.

. See La. R.S. 23:1102-1103; Moody v. Arable, 498 So.2d 1081 (La.1986).

. Wé base our finding, in part, on Rapp v. City of New Orleans, 98-1714 to 98-1730 (La.App. 4th Cir. 12/29/99) 750 So.2d 1130, writ denied, 00-0353 (La.4/7/00), 759 So.2d 761, in which the fourth circuit considered whether or not prescription applied to a workers’ compensation claim that was subject to an offset. In its analysis of this issue, the court stated:
... this Court [in an earlier opinion] found that there is a distinction between an offset of benefits and a termination of benefits.
A termination of benefits ordinarily would indicate that the employer had made the determination that the employee had no right of recovery, or that the employer refused to pay benefits regardless of that right. On the other hand, implicit in the offset is an acknowledgment that benefits are in fact due the employee, but the. employer is entitled to credit for payments the employee receives from certain statutorily designated collateral sources. Therefore, the■ exercise of the right of offset is a tacit acknowledgment of an entitlement to benefits that continues as long as the offset continues.
Id. [Rapp v. City of New Orleans, 95-1638 (La.App. 4th Cir.9/18/96), 681 So.2d 433] at 456. The court further found that, as long as the offset persists, "this continuing acknowledgment is sufficient to interrupt prescription on the employee’s underlying claim for benefits.” Id. This rule has been upheld by the court in Palisi v. City of New Orleans Fire Dept., 95-1455 (La.App. 4th Cir.3/12/97), 690 So.2d 1018, writ denied, 97-0953 (La.6/20/97), 695 So.2d 1352 and 97-1293 (6/20/97), 695 So.2d 1363. (Emphasis ours.)

. Both parties cite Gary v. Camden Fire Ins. Co., 96-0055 (La.7/2/96), 676 So.2d 553, in which the supreme court considered the issue of "whether or not the payment alone of workers' compensation benefits to an injured employee interrupts prescription with regard to a worker’s claim against third-party tort-feasors.” The court held that it did not. The plaintiffs in Gary argued that La. R.S. 23:1209(A) could be interpreted to mean that payment of benefits by the employer interrupted prescription and was applicable to third-party tortfeasors. In reaching its conclusion, the court gave an analysis of 23:1209 and stated:
La.Rev.Stat. 23:1209 states that claims for workers' compensation benefits are subject to a one-year prescriptive period which commences to run at the time of the accident. In cases where payments have been made by the employer or its insurer, Section 1209A further provides that the time limit for filing a claim for benefits does not expire until one year after the last payment. Plaintiffs therefore argue that the payment of benefits by the employer in the present case interrupted prescription and that the interruption is applicable to the third-party tort-feasors because the employer and tortfea-sors are solidary obligors. This court does not so construe Section 1209.
Section 1209 speaks to the filing of claims with the Office of Workers' Compensation (OWC) for medical expenses and compensation benefits and provides time periods for the filing of such claims in cases where benefits are not voluntarily paid or are prematurely terminated. Section 1209 is applicable therefore to the initiation of workers’ compensation claims with the OWC. It does not mention prescriptive periods in tort actions brought by an injured employee against a third-party tortfeasor. (Emphasis ours.)
We note that the case sub judice is distinguishable from Gary, supra, as here we do not have a unilateral, voluntary payment, but, rather, a payment by the employer via a valid contract (the Stipulation). Accordingly, the issue before this court is whether or not payment of lost wages and medical expenses by the tortfeasor's insurance company interrupts a workers’ compensation claim.