942 So.2d 589 (2006)
Maggie HARPER, Plaintiff-Appellant,
v.
HORSESHOE CASINO, Defendant-Appellee.
No. 41,470-WCA.
Court of Appeal of Louisiana, Second Circuit.
October 19, 2006.
*590 William R. Long, Bossier City, for Appellant.
Cook, Yancey, King & Galloway, by Lila E. Johnson, Robert Kennedy, Shreveport, for Appellee.
Before BROWN, CARAWAY, and MOORE, JJ.
BROWN, Chief Judge.
Claimant, Maggie Harper, has appealed from a judgment finding that her claim for workers' compensation benefits from her employer, Horseshoe Casino, has prescribed. For the reasons set forth below, we reverse and remand for further proceedings.

*591 Factual and Procedural Background

Maggie Harper was first employed at Horseshoe Casino as a slot attendant on June 20, 1994. As a result of repetitive work performed over several years, she began experiencing difficulties with her arms, wrists, hands, fingers, and thumbs. Ms. Harper consulted Dr. John T. Knight on May 15, 2000. On May 18, 2000, she reported her problem to Horseshoe, stating that she had been experiencing pain in both hands for several months. At that time, La. R.S. 23:1031.1 provided that a claim for an occupational disease was barred unless filed with the employer within six months of a determination of disability. Horseshoe admits that timely notice was filed. Thereafter, all expenses associated with Ms. Harper's medical treatment and costs of related procedures were paid by Cannon Cochran Management Services, Inc. ("CCMSI"), a third party administrator, on behalf of Horseshoe. Ms. Harper continued to work at Horseshoe.
On June 23, 2000, Dr. Knight performed surgery, a resection arthroplasty of the right trapeziometacarpal joint, on Ms. Harper's right hand. The same surgery was performed on her left hand on September 15, 2000. Ms. Harper continued to work at Horseshoe, but after the second surgery, she was assigned office duties and was paid a wage equal to what she had been paid as a slot attendant. We note that Ms. Harper used her vacation time for the surgeries.
Dr. Knight performed an impairment and disability determination ("IDR") on February 12, 2001. He concluded that Ms. Harper had a 23% impairment of her right upper extremity and a 22% impairment of her left upper extremity. Dr. Knight discussed this determination with Ms. Harper during a follow-up visit on February 20, 2001. Ms. Harper, who had settled into her new position, continued to work at Horseshoe at her prior wage. She also continued to see Dr. Knight on a regular basis.
When Dr. Knight relocated his office in 2001, Dr. Michelle Ritter took over Ms. Harper's treatment. Pursuant to a request by Dr. Ritter, Dr. Raymond Dennie performed a second IDR on April 10, 2002, and Ms. Harper was given a permanent partial disability ("PPD") rating of a 15% impairment in both upper extremities, amounting to a whole person impairment of 17%. At this time, La. R.S. 23:1031.1, which had been amended in 2001, provided a one-year prescriptive period for filing a disputed claim for compensation with the Office of Workers' Compensation.
On February 14, 2003, Allison Roberts, a claims representative with CCMSI, sent a letter to Ms. Harper offering a full and final settlement in the amount of $20,860.20, a figure based on the PPD rating provided by Drs. Ritter and Dennie. On February 25, 2003, Ms. Roberts sent Ms. Harper a second letter rescinding the original settlement offer. This second communication informed Ms. Harper that the PPD rating was incorrect and that a clarification from Dr. Ritter was needed, or failing that, Ms. Harper would be sent to another doctor for a new PPD rating determination. The letter did not inform Ms. Harper that she could or should take any further action.
After receiving this last letter, Ms. Harper contacted Dr. Ritter's office on three separate occasions to determine whether Dr. Ritter had been contacted by Ms. Roberts regarding a clarification of Ms. Harper's PPD rating. Personnel in Dr. Ritter's office informed Ms. Harper that they had not been contacted by Ms. Roberts or anyone else regarding her PPD rating.
On January 15, 2005, Ms. Harper sent a letter to Ms. Roberts inquiring about the *592 status of the payment for her impairment. Ms. Roberts, however, was no longer employed by CCMSI. Kim Doucette responded on February 15, 2005, informing Ms. Harper that no benefits would be paid since the prescriptive period for her claim had expired. Throughout this time, Ms. Harper continued to work full-time for Horseshoe at a wage equal to what she had earned as a slot attendant.
On February 21, 2005, Ms. Harper filed a disputed claim for compensation with the Office of Workers' Compensation alleging that Horseshoe Casino had failed to pay benefits for her permanent partial disability. The case was submitted to a Workers' Compensation Judge ("WCJ") on stipulations and deposition testimony. The WCJ entered judgment dismissing Ms. Harper's claim with prejudice on the basis of prescription. The WCJ found that Ms. Harper first experienced pain on November 1, 1999, and that her claim prescribed one year later on November 1, 2000. The WCJ further found that Ms. Harper failed to carry her burden of demonstrating that the prescriptive period was interrupted, suspended, or renounced. Ms. Harper has timely appealed from this adverse judgment.

Discussion
The employer does not question that Ms. Harper suffered a job-related occupational injury. Horseshoe has paid and continues to pay all medical expenses related to the injury. Ms. Harper, however, was a retained employee. She has continued to work, albeit in a different capacity, at her full wage. She works a full day at a legitimate job. She has settled into this new position and her wages are "earned" rather than "unearned" or a substitute for compensation.
The Workers' Compensation Act is to be liberally construed in favor of protecting workers from the economic burden of work-related injuries. Sevin v. Schwegmann Giant Supermarkets, Inc., 94-1859 (La.04/10/95), 652 So.2d 1323. An employee who suffers a work-related injury that later develops into a disability, has a viable cause of action. Prescription starts to run from the development of the disability, rather than from the first appearance of symptoms or from the first date of treatment. Id.; Smith v. Fruehauf Trailer Operations, 27,864 (La. App.2d Cir.01/24/96), 666 So.2d 1246. The finding of disability within the framework of the workers' compensation law is a legal rather than a purely medical determination. Taylor v. Garrett, 28,729 (La.App.2d Cir.10/30/96), 682 So.2d 831; Manson v. City of Shreveport, 577 So.2d 1167 (La. App. 2d Cir.1991), writ denied, 580 So.2d 928 (La.1991).
La. R.S. 23:1031.1(E), as amended in 2001, provides:
E. All claims for disability arising from an occupational disease are barred unless the employee files a claim as provided in this Chapter within one year of the date that:
(a) The disease manifested itself.
(b) The employee is disabled from working as a result of the disease.
(c) The employee knows or has reasonable grounds to believe that the disease is occupationally related.
Prior to the 2001 amendment to La. R.S. 23:1031.1, the statute provided that a claim for an occupational disease was barred unless filed with the employer within six months of the occurrence of all of the three factors listed. As previously stated, Ms. Harper timely reported her disease within this six-month period. This version of the statute was silent as to when a disputed claim had to be filed with the Office of Workers' Compensation. The Supreme Court in LaCour v. Hilti Corp., *593 98-2691 (La.05/18/99), 733 So.2d 1193, answered that question, applying the one-year prescription set forth in La. R.S. 23:1209(A).
Existence of all three of the factors listed in La. R.S. 23:1031.1 is necessary to trigger the running of the prescriptive period. Bynum v. Capital City Press, Inc., 95-1395 (La.07/02/96), 676 So.2d 582; LaCour, supra. Because Ms. Harper was able to earn wages in excess of 90% of her prior wage (in fact, she earned 100% of her prior wage), she was not entitled to Supplemental Earnings Benefits (SEB) and she was not "disabled from working as the results of the disease." Therefore, prescription, whether under La. R.S. 23:1031.1 as amended in 2001 or under La. R.S. 23:1209(A) had not yet begun to run.
Louisiana's Compensation Act provides for three types of loss. First is an entitlement to compensation for loss of earning capacity, La. R.S. 23:1221(1)-(3); second, is an entitlement to medical and hospital expenses, La. R.S. 23:1226; and third, are schedule losses, now called permanent partial disability "for anatomical loss of use or amputation," La. R.S. 23:1221(4).
Over a continuing period of development, Ms. Harper was diagnosed and found to be permanently disabled by Dr. Dennie, who determined that Ms. Harper had a PPD rating of 15% impairment in both upper extremities (improved from 22% and 23%), amounting to a whole person impairment of 17%, based on the second IDR performed on April 10, 2002.
Because Ms. Harper suffers from a permanent partial disability, but was never too disabled to work or to earn 90% of her former wages, the subject matter of her claim is covered by La. R.S. 23:1221(4), which provides compensation "solely for anatomical loss of use or amputation." Subparagraph four is distinguished from the other subparagraphs of 23:1221, as subparagraphs one through three provide compensation for a disabled employee's reduced ability to earn wages, whereas 23:1221(4) is "solely" concerned with compensation for the "anatomical loss" itself, not an economic harm resulting from the anatomical loss.
Horseshoe does not question that Ms. Harper has suffered an anatomical loss of use but claims that the time limitation for filing this claim has passed. As stated, a claim for SEB has not prescribed as the criterion set out in La. R.S. 23:1031.1 has not occurred, that is, she is not disabled from working and earning 90% of her prior wages. However, an anatomical loss of use is an independent item of recovery even if the claimant is not disabled from working.
CCMSI sent Ms. Harper the February 14, 2003, letter to notify her of the compensation due her for her anatomical loss based on the final IDR from Dr. Dennie. Since Horseshoe never terminated Ms. Harper, and since her disability substantially improved over time, we find this second medical diagnosis on April 10, 2002, to provide the date Ms. Harper's developing injury became, with certainty, permanently disabling for the purpose of prescription as provided by the applicable statutory provisions and jurisprudence.
Therefore, Ms. Harper's claim for an anatomical loss would have prescribed on April 10, 2003, and she did not file her claim until February 23, 2005. This conclusion, however, fails to take into account the matter of the two letters sent to Ms. Harper by CCMSI on February 14 and 25, 2003. The first letter offered a full and final settlement based on Dr. Dennie's PPD rating. The second letter rescinded that offer, informing Ms. Harper that the PPD rating was flawed; stating that *594 CCMSI would correct the flaw; implying that Ms. Harper should simply wait; and further, putting Ms. Harper on notice that Dr. Ritter may be replaced as Ms. Harper's diagnosing physician. Thereafter, CCMSI conspicuously did nothing until Ms. Harper's letter of inquiry to them dated January 15, 2005.
The exception of estoppel is recognized by Louisiana courts when an employee is lulled into a false sense of security by the employer/insurer and is induced to forgo the filing of her claim until the prescriptive period has expired. See Millican v. General Motors Corporation, 34,207 (La.App.2d Cir.11/01/00), 771 So.2d 234, writ denied, 01-0001 (La.03/23/01), 788 So.2d 426. The claimant must show that words, action or inaction on the part of the employer/insurer induced her to withhold suit until the time for prescription had passed. If the claimant prevails on this point, the employer/insurer is estopped from raising prescription as a defense. Id. It is not necessary for a claimant to prove that she was intentionally lulled into a false sense of security by the employer/insurer. Rambin v. Shreveport Refrigeration, Inc., 39,592 (La.App.2d Cir.05/04/05), 902 So.2d 1129.
In the instant case, we find that Ms. Roberts' letter dated February 25, 2003, was written in such a manner that it lulled Ms. Harper, through its actual content and through the absence of specific words or notice, into a false sense of security. We reach this conclusion notwithstanding that Ms. Harper waited almost two years from when the letters were written to file her claim. Considering Ms. Harper's continued employment with Horseshoe and Horseshoe's previous acceptance and voluntary payment for the treatment of her occupationally-induced injury, we do not find, under the circumstances of this case, that Ms. Harper was unreasonable in waiting for Ms. Roberts to follow up as implied in her second correspondence to Ms. Harper. Therefore, Horseshoe is estopped from raising prescription as a defense.

Conclusion
For the reasons set forth above, the WCJ's judgment dismissing Maggie Harper's claim on the basis of prescription is reversed. The matter is remanded for further proceedings consistent with this ruling. Costs of this appeal are to be borne by defendant, Horseshoe Casino.
REVERSED AND REMANDED.
CARAWAY, J., concurs with written reasons.
CARAWAY, J., concurring.
I respectfully concur, concluding that the operation of the statute alone precluded the running of prescription.
Despite Harper's election to seek permanent partial disability benefits, her disability could eventually lead to a claim for wage benefits in the form of supplemental earnings benefits (SEBs). The jurisprudence indicates that both partial disability benefits and SEBs may be awarded depending upon which one is more favorable to her at a given time. Andrews v. Pine Hill Wood Co., 426 So.2d 196 (La.App. 2d Cir.1982), writ denied, 432 So.2d 267 (La. 1983); Lee v. Gaffney Construction. Co., 474 So.2d 994 (La.App. 5th Cir.1985), writ denied, 477 So.2d 706 (La.1985); Fielder v. Triple S. Masonry, 438 So.2d 642 (La.App. 2d Cir.1983); Guidry v. Boh Bros. Construction Co., 545 So.2d 538 (La.App. 5th Cir.1989); Wex S. Malone & H. Alston Johnson, III, Workers' Compensation Law and Practice, § 279, in 13 Louisiana Civil Law Treatise (4th Edition 2002). There is an interrelationship between the two forms of benefits for her protection along with a credit to the employer for payments made for partial disability benefits against any future SEBs. Malone & Johnson, supra.
*595 This somewhat unique and complicated benefit structure becomes more difficult when, instead of a work-related accident triggering the entitlement, the gradual onset of an occupational disease precipitates the need for these benefits. The gradual disabling effect of an occupational disease results in the special test for prescription embodied in La. R.S. 23:1031.1(E). Until the employee with the occupational disease becomes "disabled from working," the statute provides that prescription on "[a]ll claims for disability" benefits does not begin to run. I agree with the majority that prescription has not yet begun to run. This is clearly seen with regard to potential SEB benefits, and because of the interrelationship of the administration of both partial disability benefits and SEBs, prescription does not run against Harper's present claim until she becomes "disabled from working."