CRICHTON, J.,
dissents and assigns reasons.
hi respectfully dissent from the majority opinion, and would affirm the hearing officer’s ruling sustaining defendants’ peremptory exception of prescription. In my view, for the reasons set forth below, I find the lower courts correctly found that plaintiffs appeal of the denial of his requested medical treatment (an MRI) was untimely filed, as it was filed outside of the appeal delays found hi La. R.S. 23:1203.1 and the corresponding Administrative Code provisions: 40 LAC 1.2715(B)(3)(e) and 40 LAC 1.2715(B)(3)(f). Specifically, I do not find the time periods set forth in the aforementioned statutes are prescriptive periods, but are appeal delays appropriately created to comply with the statute’s intent to accomplish efficient and swift resolution of medical treatment disputes.
The general prescriptive periods in the Louisiana Workers Compensation Act are set forth in La. R.S. 23:1209(A), which provides that the claim of an injured employee for weekly benefits ■ is not prescribed if filed within the following time periods: (1) within one year from the date of the accident; or (2) one year from the last payment of compensation, except that in cases of benefits payable pursuant to La. R.S. 23:1221(3), the limitation shall not take effect until three years 19after the last weekly of compensation; or (3) one year from the time the injury develops. But in all such cases the claim for payment shall be forever 'barred unless the proceedings have begun within three years of the date of the accident. Similarly, La. R.S. 23:1209(C) provides that all claims for medical benefits under La. R.S. 23:1203 “shall be filed within one year after the accident or death the parties have agreed upon the payments to be made under that Chapter, or unless within one year after the accident a formal claim has been filed with the workers’ compensation office.” In that instance, the limitation shall not take effect until three years from the time of making the last payment of medical benefits. La. R.S. 23:1209(C).
It is well settled that historically, in line with the general intent of the Workers’ Compensation Act and related jurisprudence, courts have utilized a generally lenient view of prescriptive periods.[1] Thus, prescription statutes, including La. R.S. 23:1209(A), are construed in favor of maintaining rather than barring actions. See, e.g., Taylor v. Liberty Mut. Ins. Co., 579 So.2d 443, 446 (La.1991); Howard v. Trebles, 95-0227, p. 4 (La.App. 1 Cir. 02/23/96), 669 So.2d 605, 607. Furthermore, for those time periods that are listed specifically in La. R.S. 23:1209, the pur *425 poses are well established: (1) to enable an employer to determine when his-«potential liability for an accident would cease; (2) to prevent suits based on stale claims where evidence might be destroyed or difficult to produce; and (3) to fix a statute of repose giving rise to a conclusive presumption of waiver of his claim on the part of an employee where he fails to bring his suit within the fixed period. Harris v. Traders and General Ins. Co., 200 La. 445, 458, 8 So.2d 289, 293 (La.l942); Lunkin v. Triangle Farms, Inc., 208 La. 538, 23 So.2d 209 (1945). See also, 14 La. Civ. L. Treatise, H. Alston Johnson III, Workers’ Compensation Law and Practice § 384 (4th ed.2002).
In my view, however, the time periods set forth in the subject statute, La. R.S. 23:1203.1, are not prescriptive statutes at all, and are in fact not intended to satisfy the objectives listed above. Rather, as this court has discussed previously, and as noted by the appellate court in this matter, La. R.S. 23:1203.1 was enacted with the express intent “that, with -the establishment and enforcement of the medical treatment schedule, medical and surgical treatment, hospital care, and other health care provider services shall be delivered in an efficient and timely manner to injured employees.” La.- R.S. 23:1203.1(L). This court thoroughly examined the history and purpose behind La. R.S. 23:1203.1 in Church Mut. Ins. Co. v. Dardar, 13-2351 (La.5/7/14), 145 So.3d 271, 275-6:
Enacted by the legislature in 2009, La. R.S. 23:1203.1 is the product of a combined endeavor by employers, insurers, labor, and medical providers to establish meaningful guidelines for the treatment of injured workers. 1 DENIS PAUL JUGE, LOUISIANA WORKERS’ COMPENSATION, § 13:6 (2d ed.2013). Dissatisfied -with a process for obtaining needed medical treatment that was cumbersome, uncertain and often fraught with expense, employers and their insurers perceived a need for guidelines that would assure them that the treatment recommended by a medical provider was generally recognized by the medical community as proper and necessary. Id. In a similar vein, labor and their medical providers were concerned about the unreasonable delays regularly encountered in obtaining approval for treatment when disputes arose as to the necessity for the treatment and with having a procedure for obtaining approval for treatment that might vary from established guidelines. Id.[2]
La. R.S. 23:1203.1 provides that the director of the Office of Workers’ Compensation Administration “shall .... promulgate rules in accordance with the ^Administrative Procedure Act, R.S. 49:950, et seq., to establish a medical treatment schedule.” La. R.S. 23:1203.1(B). See also, La. R,S. 23:1291(B)(5) (giving authority to the director of the OWC to promulgate rules in accordance with the Louisiana Administrative Code “which are not inconsistent with the laws of this state.”) Most pertinent to the issue pres *426 ently before, the court, La. R.S. 23:1203.1(1) and (K) state as follows: ■
J. (1) After a medical provider has-submitted to the payor the request for au■thorization and the information required by the Louisiana Administrative Code, Title 40, Chapter 27, the payor shall notify the medical provider of their action on the request within five business days of receipt of -the request. If any dispute arises after January 1, 2011, as to whether the recommended care, services, or treatment is in accordance with the medical treatment schedule, or whether a variance from the medical treatment schedule is , reasonably, required as contemplated in Subsection I of this: Section, any aggrieved party shall file, within fifteen calendar days, an appeal with the office of workers’ •compensation administration medical,director or associate medical director on a form promulgated by the director. , The medical director or associate medical director shall render a decision as soon as is practicable, but in no event, not more than thirty calendar days from the date of filing.
(2) If either party, the medical director, or associate medical director believes that- a potential conflict of interest exists, he shall communicate in writing such information to the director, who shall-make a determination as to whether a conflict exists within two business days. The director shall notify in writing the patient, the physician, and, if applicable, the attorney of his decision-within two business days.
K. After the issuance of the decision by the medical director or associate medical director of the office, any party who disagrees with the decision, may then appeal by filing a “Disputed Claim for Compensation”, which is LWC Form 1008. The decision may be overturned when it is shown, by clear and convincing evidence, the decision of the medical director or- associate medical director was not in accordance with the provisions' of this Section. (Emphasis added)
" ' * * *
Under the plain terms of the aforementioned provisions, an appeal from a dispute concerning requested medical treatment requires a multi-step process. After an initial request for authorization for treatment is submitted, the “payor” must notify the medical provider of their decision within five (5) business days. If a dispute thereafter arises as to whether the treatment is in accordance with the 1 .medical treatment schedule or a variance from the schedule is required, any aggrieved party must then file, within fifteen (15) calendar days, an appeal to the medical director or associate medical director. The director then has thirty days to render a decision. After the issuance of that decision, any party who disagrees with the decision may then file an appeal through the filing of a Form 1008 (a Disputed Claim for Compensation), As the revised statute is written, there is no time period listed for the filing of Form 1008. See La. R.S. 23:1203.1(K). However, the related Administrative Code provisions (40 LAC 1.2715(B)(3)(e) and 40 LAC 1.2715(B)(3)(f)) do set forth a time period for the filing of the Form 1008:
(B)(3)(e) Disputes shall be filed by any aggrieved party on a LWC-WC-1009 within 15 calendar days of receipt of the denial or approval with modification of a request for authorization. The medical director shall render a decision as soon as practicable, but in no event later than 30 calendar days from the date of filing. The decision shall determine whether:
i. the recommended care, services, or treatment is in accordance with the medical treatment schedule; or
*427 ii. a variance from .the medical treat-
ment schedule is reasonably required; or .
iii. the recommended care, services, or treatment that is not covered by the medical treatment schedule is in accordance with another state’s adopted guideline pursuant to Subsection D of R.S. 23:1203.1.
(B)(3)(f) In accordance with LAC 40:I.5507;C, any party feeling aggrieved by the R.S. 23:1203.1(J) determination of the medical director shall seek a judicial review by filing a Form LWC-WC-1008 in a workers’ compensation district office within 15 calendar days of the date said determination is mailed to the parties. A party filing such appeal must simultaneously notify the other party that an appeal of the medical director’s decision has been filed. Upon receipt of the appeal, the workers’ compensation judge shall immediately set the matter for an expedited hearing to be held not less than 15 days nor more than 30 calendar, days after the receipt of the appeal by the office. The workers’ compensation judge shall provide notice of the hearing date to the parties at the same time and in the same manner.[3]
* * *
In this case, the Office of Workers’ Compensation judge found that the plaintiffs Form .1008, filed May 1, 2013, disputing the Medical Director’s denial of his requested MRI on September 18, 2012, and October 19, 2012, was , untimely and granted the defendants’ exception of prescription. Although I specifically question thé usé of an exception of prescription as the proper vehicle to enforce this particular appeal period (the statute as written does not presently provide a mechanism), nevertheless, I conclude that the rulings that plaintiffs appeal was untimely were correct. Further, while the appeal of the denial of this particular request in this instance may be untimely in that it was filed outside of the appeal period listed in the statute, as the court of appeal noted as well, the plaintiff is not prevented 'from filing a new request for this medical treatment. La. Civ.Code art. 3463 provides that “[a]n interruption of prescription resulting from the filing of a suit in a competent court and in the proper venue or from service of process within the prescriptive period' continues as long as the suit is pending....” Because the original Form 1008 was filed in the workers’ compensation office on May 1, 2013, it served as a continuing interruption of prescription. Merely because the workers’ compensation judge found that this particular filing by plaintiff was untimely pursuant La. R.S. 23:1203.1 — that is, the delay period to appeal the decision regarding treatment lapsed — this doés not bar the plaintiff from submitting a renewed or different request for medical treatment.
As’ the statute specifically states, and the Church Mut. Ins. Co. court explained, the purpose of this statute was an attempt to avoid battles over the “choice of physician” and to provide medical treatment in a “timely and efficient” manner. In order to satisfy the legislative intent, the short *428 timeframe of fifteen (15) days was established. Moreover, it is likely the legislature viewed this particular 17procedure in terms of an independent request and deci-sional process for medical treatment, which would be available even if there were not a current pending suit for disputed compensation.[4] I specifically do not find the failure to abide by the efficient time periods set forth in the statute precludes a claimant from filing a new request or new claim for medical. treatment, and disagree with the majority that such a process is “practically absurd.”[5] As La. R.S. 23:1310.8(A) provides, “[t]he power and jurisdiction of the workers’ compensation judge over each case shall be continuing and he may, upon application by a party and after a contradictory hearing, make such modifications or changes with respect to former findings or orders relating thereto if, in his opinion, it may be justified.... ” Consequently, even if a particular request may be untimely if filed outside of the delay period set forth in La. R.S. 23:1203.1, again, I find nothing that would preclude a workers’ compensation hearing officer from entertaining a renewed or different request for treatment under that same provision. In fact, as mentioned above, as the statute is presently written, it is devoid of a particular procedural remedy to “enforce” the appeal periods, and as such, finding the plaintiffs appeal untimely m this instance was not inappropriate. To find otherwise would render the efficient administrative procedure set forth in La. R.S. 23:1203.1 meaningless. In my view, contrary to |sthe majority’s reasoning that this process is “economically inefficient,” I believe the statute was enacted with the intent to avoid unnecessary delays for the employee seeking treatment, while assuring the employer that the medical treatment sought is reasonable and necessary. As such, I would find that the lower courts correctly ruled that the plaintiffs appeal from the medical director’s denial of his requested MRI was untimely, filed, as the time period under La. R.S. 23:1203.1 had lapsed. For these reasons, I respectfully dissent from the majority’s finding otherwise.

. Scott v. Walmart Stores, Inc., 03-0104, p. 6 (La.App. 4 Cir. 7/2/03), 851 So.2d 1210, citing Millican v. General Motors Corp., 34,207, p. 1 (La.App. 2 Cir. 11/1/00), 771 So.2d 234, 235, writ denied, 2001-0001 (La.3/23/01), 788 So.2d 426; See, e.g., Glascock v. Georgia-Pacific Corp., 25,677 (La.App. 2 Cir. 03/30/94), 635 So.2d 474, 479; Wesley v. Claiborne Elec. Co-op., Inc., 446 So.2d 857 (La.App. 2 Cir.1984); See generally, 14 La. Civ. L. Treatise, H. Alston Johnson III, Workers’ Compensation Law and Practice § 384 (4th ed.2002)

. The Church Mut. Ins. Co. court also stated in a footnote that "[p]rior to the enactment of La. R.S. 23:1203.1. the determination of what medical treatment was appropriate was entrusted in the first instance to an insurer, which was tasked with evaluating any request for medical treatment in excess of $750. La. R.S. 23:1142. If a dispute arose as to whether a particular treatment was reasonable and necessary, the task of resolving that dispute was left to an OWC judge, who would resolve that dispute on an ad hoc basis, generally after a second medical opinion examination, perhaps an OWC-ordered independent medical examination, and on competing testimony of medical providers as to what was, in their respective opinions, “medically necessary” under the circumstances.” Church Mut. Ins. Co., supra, at n. 3.

. Although it does not bear any weight on my viewpoint contained herein, it is interesting to note that the documents provided to the plaintiff in this instance informing him that his requested medical treatment had been denied provide the following instructions for appealing the denial:
Dispute Resolution Process
"Any party feeling aggrieved by the R.S. 23:1203.1(J) determination of the medical director shall seek a judicial review by filing Form LWC-WC-1008 Disputed Claim for Compensation with the appropriate hearing office within 15 days of the date said determination is made to the parties."

. As the Dardar court stated, the legislative history of this statute, while providing no legal authority, revealed nothing profound in terms of the statute’s origins:
While unnecessary to a proper resolution of the issues presented, for the sake of thoroughness, we have examined the legislative history of Act 254 of 2009 and find nothing remarkable in its genesis or progression through the legislative process. The bill originated in the Senate as SB 303 and was passed by unanimous vote. The final vote in the House was 69 to 35 in favor of passage, with the floor debate centered almost entirely on a controversial amendment unrelated to the contents of the bill that was ultimately removed from the final Act. The Bill passed through the Senate and House Committees on Labor and Industrial Relations with favorable reports, and testimony substantiating the notion that the bill was a collaborative endeavor on the part of employers, insurers, labor and the medical community,
Dardar, supra, at n. 4.

. In fact, the plaintiff testified at the trial of this matter that he underwent a second MRI in October, 2013, which was approved by the medical director.