ROSEMARY LEDET, Judge.
|, This is a workers’ compensation case. The claimant, Floyd Safford, appeals from the November 4, 2015 judgment of the Workers’ Compensation Judge (“WCJ”) granting the exception of prescription filed by the defendant, the New Orleans Fire Department (“NOFD”), and dismissing with prejudice the claimant’s claim for, indemnity benefits under the Heart and Lung Act, La. R.S. 33:2581. [1]For the reasons that follow, we reverse and remand.
1 ¡TACTUAL AND PROCEDURAL BACKGROUND
Given the sole issue presented in this case is prescription, we present the factual and procedural background in the form of the following chronology:
• January 7, 1975 — Mr. Safford commenced employment with NOFD.
• November 7, 1997 — Mr. Safford, while on duty, suffered a cardiac ■ event, which he déseribed in his deposition as his “heart just started hurting really bad.” He was treated on that same day at the emergency room, and his diagnosis was a possible mitral valve prolapse. Although he reported this event to NOFD, this cardiac condition did not result in him missing any further work.
• December 8, 2004 — Mr. Safford severely injured his left hand on-the-job. Following this hand injury, he never returned to fulltime duty as a firefighter. Thereafter, NOFD began paying his medical bénefits for his hand injury.
• December 16, 2004 — NOFD commenced paying Mr. Safford temporary total disability (“TTD”) benefits for his hand injury.
• May 1.3, 2005 — Mr, Safford had surgery on his left hand.
• January 15, 2006 — Mr. Safford retired and began receiving a disability pension. The primary reason he re *230 tired was because of the disability due to his hand injury. Mr. Safford, however, acknowledged in his deposition that his cardiac condition also contributed to his retirement.
• February 1, 2006 — NOFD commenced paying Mr. Safford supplemental earning benefits (“SEB”) for his hand injury.
• September 24, 2009 — Mr. Safford suffered another cardiac event — an atrial fibrillation attack.
• June 11, 2010 — Mr. Safford filed a workers’ compensation claim for his cardiac condition under the Heart and Lung Act, completing the following two forms: (i) an Employer’s Report of Occupational Injury or Disease, and (ii) a Form 1007. The “Employer’s ' Report of Occupational Injury of Disease” stated that it is “a report of injury and not a claim.” On that form, he listed the injury or' disease as atrial fibrillation attacks occurring on November 7, 1997; • August 11, 2009; November 25, 2009; February 17, 2010; and June 5, 2010. On the Form 1007, he indicated that the purpose |aof the filing was “medical only.”[2] Effective retroactive to . the date those forms were filed (June 11,2010), NOFD commenced paying Mr. Safford’s medical bills for his cardiac condition.
• January 24, 2011 — COSMSI—NOFD’s third-party administrator — sent Mr. Safford a letter stating: “[t]his letter is to inform you we received notice of "your Heart and Lung claim on 6/16/10. After investigation and our Second Medical opinion, doctor agreed with your physician[.] Your claim has been accepted under the Heart and Lung act effective 6/11/10.”
• December 31, 2014 — NOFD ceased paying. Mr. Safford SEB benefits for his -hand' injury because it had complied with its 520-week indemnity obligation under the Louisiana Workers’ Compensation Act.[3]
• February 16,' 2015 — In response to NOFD’s correspondence confirming that Mr. Safford’s indemnity benefits in connection with his hand injury would be terminated upon the expiration of NOFD’s 520-week indemnity obligation, Mr. Safford’s counsel sent a letter to NOFD demanding that it pay Mr. Safford indemnity (SEB) benefits through 2020 for Mr. Safford’s cardiac condition. The letter further stated that Mr. Safford “has been receiving medical benefits for his cardiac condition since June of 2010” and that “[sjince this occupational disease is separate from his hand injury, Mr. Safford is entitled to supplemental earnings benefits for his cardiac condition. The cardiac condition is a new ■■ injury.”
"• March 31, 2015 — Mr. Safford filed a disputed claim — a Form 1008 — alleging that he “was treated for a cardiac condition beginning 9/24/09. Carl Levie, M.D. confirmed Dr. Iteld and .Dr, Bethala’s diagnosis of atrial fibril *231 lation on 9/28/10.”[4] In the Form 1008, he identified the bona-fide dispute as “[n]o wage benefits have been paid.”
14» July 28, 2015 — NOFD filed an exception of prescription.[5] In- support, NOFD cited La. R.S. 23:1209(A)[6] and La. R.S. 23:1031.1(E),[7] which it contended require any suit for indemnity benefits be filed within one year of the manifestation of the condition. NOFD pointed out that Mr. Safford’s claim for indemnity benefits arising out of his cardiac condition — which began as early as 1997, which contributed to his retirement in 2006, and which was diagnosed as atrial fibrillation no later than September 28, 2010 — was not filed until March 31,2015., NOFD. thus contended the claim was prescribed.
• August. 18, 2015 — Mr. ' Safford attested — in the affidavit he presented in opposition to the NOFD’s prescription exception — that he “believed the | fiCity of New Orleans had approved SEB benefits related to my cardiac condition. I was lulled into a false sense of security by my continued receipt of SEB benefits following approval of my cardiac condition claim.”[8]
*232 WORKERS’ COMPENSATION JUDGES’ ACTION
At the hearing on the exception, the WCJ noted that to invoke the estoppel exception a claimant must show “some type of active conduct on behalf of the employer or its agents” and that here there was “no active engagement,” The WCJ, however, acknowledged that “both sides have very valid arguments” and took the matter under advisement. Thereafter, the WCJ rendered judgment granting the NOFD’s exception of prescription and dismissing with prejudice Mr. Safford’s claim for indemnity benefits associated with his cardiac condition.
Rejecting Mr. Safford’s contention that NOFD lulled him into not filing suit timely, the WCJ, in her written reasons for judgment, reasoned as follows:
Mr. Safford ... argues that the City of New Orleans is 'estopped from raising the prescription defense because the adjuster lulled him into not filing suit. Mr. Safford presented insufficient evidence to demonstrate any action, intentional or otherwise, on behalf of the employer or its insurer to attempt in any way' to discourage him from filing suit. After applying for medical benefits in June 2010, CCSMSI [the NOFD’s third-party administrator] sent him a letter on January 24, 2011, approving his Heart and Lung claim. If he was not receiving indemnity benefits, he could have and should have filed suit after that time.[9]
| (¡This appeal followed.
STANDARD OF REVIEW
The jurisprudence is well settled that in workers’ compensation cases the appropriate standard of review to be applied by an' appellate court in reviewing a WCJ’s factual findings is the manifest error standard. Seal v. Gaylord Container Corp., 97-0688, p. 4 (La.12/2/97), 704 So.2d 1161, 1164; Dean v. Southmark Constr., 03-1051, p. 7 (La.7/6/04), 879 So.2d 112, 117.
DISCUSSION
Mr. Safford does not dispute the WCJ’s finding that his claim for indemnity benefits under the Heart and Lung Act— his cardiac condition claim — is prescribed on its face under both the governing statutory provisions, which are La. R.S. 28:1209 A and R.S. 23:1031.1 E.[10] When, as here, *233 a workers’ compénsation claim has prescribed- on its face, the claimant [ 7has the burden of establishing that prescription has been interrupted or suspended in some manner. Jonise v. Bologna Brothers, 01-3230, p. 6 (La.6/21/02), 820 So.2d 460, 464 (holding that “[w]hen a workers’ compensation claim is prescribed on its face, the burden is upon the claimant to show the running of prescription was suspended or interrupted in some manner”); Lima v. Schmidt, 595 So.2d 624, 628 (La.1992) (holding that if the face of the petition shows that the prescriptive period has already elapsed, the plaintiff has the burden of establishing a suspension, an interruption, or a renunciation.). Although the claimant bears the burden of showing that prescription has- been interrupted or suspended, “these requirements are interpreted liberally in favor of maintaining rather than barring the action,” Millican v. General Motors Corp., 34,207, p. 3 (La.App. 2 Cir. 11/1/00), 771 So.2d 234, 236 (citing Glascock v. Georgia—Pacific Corp., 25,677 (La.App. 2 Cir. 03/30/94), 635 So.2d 474); Howard v. Trelles, 95-0227, p. 4 (La.App. 1 Cir. 02/23/96), 669 So.2d 605, 607; Scott v. Walmart Stores, Inc., 03-0104, p. 6 (La. App. 4 Cir. 7/2/03), 851 So.2d 1210, 1213-14.[11]
A workers’ compensation claimant may avoid prescription by proving that his ease falls under one of the ‘refinements’ or exceptions developed in the jurisprudence. 14 H. Alston Johnson, III, LÁ.' CIV. L. TREATISE, WORKERS’ COMPENSATION LAW AND PRACTICE § 384 (5th ed.). One such jurisprudential refinement is an estoppel exception that applies when an employer lulls an employee into a false sense of security or prevents an employee from Istimely filing his lawsuit. Causby v. Perque Floor Covering, 97-1235, p. 10 (La.01/21/98), 707 So.2d 23, 28; see also Millican, 34,207 at p. 2, 771 So.2d at 235-36; Dupaquier v. City of New Orleans, 260 La. 728, 734, 257 So.2d 385, 387-88 (1972).
To invoke the estoppel exception, the claimant is required to establish that the employer’s words, action, or inaction' induced him to withhold suit until the prescriptive period has elapsed. Rambin v. Shreveport Refrigeration, Inc., 39,592, p. 9 (La.App. 2 Cir. 05/04/05), 902 So.2d 1129, 1135 (quoting Millican, 34,207 at p. 4, 771 So.2d at 236); Norman v. BellSouth Tele *234 communications, 04-0797, p. A (La.App. 4 Cir. 10/27/04), 888 So.2d 340, 343 (citing Millican, supra.). The claimant is not required to establish that the employer intentionally misled him as to the nature of the benefits being paid or as to the time period available for asserting a claim. Id. When the claimant meets his burden to establish that the estoppel exception applies, “prescription is suspended or, more accurately, the employer or insurer is simply estopped to raise it as a defense.” 14 H. Alston Johnson III, LA. CIV. L. TREATISE, WORKERS’ COMPENSATION LAW AND PRACTICE § 384 (5th éd.).
Mr. Safford’s sole assignment of error is that the WCJ erroneously found that he failed to present sufficient evidence to meet his burden that the estoppel exception applies. In support of his contention that he met his burden, Mr. Safford cites the following three facts: (i) NOFD accepted his cardiac condition claim in writing' — CCSMSI (NOFD’s third-party administrator) informed him by letter that his “claim has been accepted under the Heart and Lung act effective 6/11/10”; (ii) after accepting his cardiac condition, claim, NOFD continued paying him indemnity (SEB) benefits on another claim — his hand injury claim; and (iii) NOFD [¡¡never in-, formed him that his cardiac condition claim was denied. Mr. Safford thus contends that he was lulled into a false sense of security that his cardiac condition claim had been “accepted.”[12]
NOFD counters that the WCJ correctly found the .estoppel exception is inapplicable. It contends that Mr. Safford’s argument — that it should be estopped simply because it “continued paying indemnity benefits on another claim” — fails to take into consideration that the 2004 hand injury — for which it was legally obligated to continue paying indemnity benefits until December 2014 — is a wholly separate, distinct claim from the claim arising out of the cardiac condition. Mr. Safford fails to cite any support — and NOFD contends that there is none — for a finding that the indemnity payments for the 2004 hand injury — a wholly separate, distinct claim— can interrupt prescription on the present claim for the cardiac condition.
NOFD points out that the only evidence Mr. Safford presented in support of his position that the estoppel exception applies was CCSMSI’s letter accepting his cardiac condition claim. NOFD contends that CCSMSI’s letter must be read in conjunction with the two forms that Mr. Safford filed — Form 1007 and the “Employer’s Report of Occupational Injury of Disease”— for which the approval was issued. Reading together CCSMSI’s letter and those two forms, NOFD contends, it is clear the only claim that it approved was one for medical benefits. NOFD thus contends that the record does not support a finding that Mr. Safford 110was lulled into believing that it was approving indemnity benefits for his cardiac condition.[13]
*235 The prescription issue in this case turns on whéther the silence in CCSMSI’s letter as to whether the acceptance of the cardiac condition claim was limited to medical benefits, taken together with the fact that when the letter was sent NOFD was payr ing Mr. Safford indemnity benefits, albeit for the unrelated hand injury, is sufficient evidence to invoke the estoppel exception. Although our research revealed no case directly on point, our analysis in the Norman case, which Mr. Safford cites in support of his position, is instructive.
In the Norman case, the claimant suffered a work-related injury in January 2000; however, she failed to file a workers’ compensation claim (Form 1008) until July 2001. When she filed her claim, her employer responded by filing an exception of prescription. Opposing her employer’s exception of prescription, the claimant argued that'she delayed filing a claim ‘because she mistakenly believed that her injury was being handled as a worker’s compensation claim through her employer’s workers’ compensation carrier, Kem-per Insurance Company. The evidence the claimant, Ms, Norman, introduced in support of her position included the following:
. Ms. Norman received a correspondence from Kemper Insurance Companies, dated January 13, 2000, explaining that the company was Inhandling her workers’ compensation claim and assigning her a claim number (447 128745). Ms. Norman thereafter received a correspondence from Kemper National Services, informing her that the company was administering her short-term disability claim for BellSouth. Ms. Norman further introduced a letter from Kemper Insurance Companies to Dr. Bourgeois on January 26, 2001, requesting information from him with regard to Ms. Norman’s workers’ compensation claim (claim # 447 128745).
Norman, 04-0797 at pp. 5-6, 888 So.2d at 344.
Although the WCJ recognized that the claimant was confused and misled by the consolidated administration of her employer’s workers’ compensation and disability benefit plans through Kemper Insurance Companies and Kemper National Services, the WCJ found her claim was prescribed. Agreeing with the employer, the WCJ reasoned that the employer’s payment of short-term disability benefits, by itself, could not interrupt prescription on the indemnity claim.
Reversing, this court, in the Norman case, found that the totality of the circumstances supported invoking the estoppel exception. In. so finding, we reasoned as follows: -
- The evidence presented by Ms. Nor.man indicates that she received an affirmative assurance from Kemper Insurance Companies that a workers' compensation claim was initiated on her •behalf.' Moreover, at no time was Ms. Norman ever informed that workers’ compensation had been denied or that her claim was being handled as a short-term disability claim instead of workers’ compensation. Under the facts presented in this case, and considering the liberal rules of construction afforded the workmen’s compensation statute, we find that the trial court ruling was manifestly erroneous and prescription was interrupted.’ ■
Norman, 04-0797 at 6, 888 So.2d at 344. In sum, we held that the employer’s affirmative assurance that a claim had been initiated coupled with the claimant’s reasonable confusion regarding same was suf *236 ficient evidence to invoke the estoppel exception.
|12The totality of the circumstances in this case, as in Norman, supra, dictates a finding that the estoppel exception applies. Here, NOFD’s affirmative conduct was its acceptance of Mr. Safford’s cardiac condition claim; and Mr. Safford’s reasonable confusion was his misunderstanding regarding whether the acceptance included indemnity benefits. By sending a letter unconditionally accepting Mr. Safford’s cardiac condition claim, CCSMSI, acting on NOFD’s behalf, created confusion regarding Mr. Safford’s entitlement to indemnity benefits. The confusion was created not only by the silence in the letter regarding whether the acceptance was limited to medical benefits, but also by the circumstances existing when the letter was sent. At that time, NOFD was paying Mr. Safford indemnity (SEB) benefits, albeit for his unrelated hand injury. Under these circumstances, it was not unreasonable for Mr. Safford — an unrepresented,[14] lay person — to become .confused. As a result of the confusion, he was led to believe that,.the acceptance of his cardiac condition claim included indemnity benefits and that no further action on his part was needed.
We acknowledge, as NOFD points out, that Mr. Safford’s belief is somewhat belied by.the fact that both of the forms he completed in connection with his cardiac condition claim sought approval for only medical benefits; neither form included a request .for indemnity benefits. Nonetheless, Mr. Safford’s belief is buttressed by the fact that, at that time, he was receiving indemnity (SEB) benefits. From Mr. Saf-ford’s perspective, when NOFD approved his cardiac condition claim, he was receiving all the money that he believed he was entitled to receive injjjthe form of indemnity benefits. As his counsel argued at the hearing, it was reasonable for Mr. Safford to believe that he was not entitled to receive two “indemnities.” Stated differently, he would not have been entitled' to concurrent payment of SEB benefits for his hand injury and his cardiac condition; as the WCJ acknowledged, some type of harmonization of benefits would have been required. Moreover, if CCSMSI, acting on NOFD’s behalf, had limited its written approval of Mr. Safford’s cardiac condition claim to medical benefits, the confusion regarding his entitlement to indemnity benefits for that claim could have been avoided.
In sum, NOFD’s affirmative, unqualified acceptance of Mr. Safford’s cardiac condition claim — as documented in CCSMSI’s letter — coupled with Mr. Safford’s reasonable confusion regarding the status of his entitlement to indemnity benefits for his cardiac condition claim is sufficient evidence to support invoking the estoppel exception. We thus hold that the WCJ was manifestly erroneous in finding that the evidence was insufficient to invoke the es-toppel exception. Our holding is in accord with the liberal rules of construction ‘ afforded claims under the Workers’ Compensation Act. See Scott, supra; Millican, supra.

DECREE

For the foregoing reasons, the judgment of the Workers’ Compensation Judge is reversed;' and this matter is remanded for further proceedings.
REVERSED AND REMANDED

. The Heart and Lung Act is special legislation created to protect firefighters who develop cardiac and pulmonary issues resulting from their service. See Richards v. St. Bernard Par. Gov’t, 11-1724 (La.App. 4 Cir. 5/2/12), 91 So.3d 524, 526. The Heart and Lung Act is codified in La. R.S. 33:2581, which provides as follows:
Any disease or infirmity of the heart or lungs which develops during a period of employment in the classified fire service in the state of Louisiana shall be classified as a disease or infirmity connected with employment. The employee affected, or his survivors, shall be entitled to all rights and benefits as granted by the laws of the state of Louisiana to which one suffering an occupational disease is entitled as service connected in the line of duty, regardless of whether the fireman is on duty at the time he is stricken with the disease or infirmity. Such disease or infirmity shall be presumed, prima facie, to have developed during employment and shall be presumed, prima facie, to have been caused by or to have resulted from the nature of the work 'performed whenever same is manifested at any time after the first five years of employment.
The Heart and Lung Act "expressly, and in precise words, subjects firemen’s heart and lung claims to the provisions of the compensation act” McElwee v. City of Bossier City, 34,345, p. 4 (La.App. 2 Cir. 12/6/00), 775 So.2d 588, 590-91 (citing Coats v. City of Bossier City, 31,164 (La.App. 2 Cir. 10/30/98), 720 So.2d 1281). Stated otherwise, "[o]nce an employee’s heart disease or infirmity is determined to have been caused by or resulted from work performed as per La. R.S. 33:2581, questions of compensation are then decided pursuant to the Workers’ Compensation Act.” Miley v. Bogalusa Fire Dep’t, 14-1113, p. 4 (La.App. 1 Cir. 3/6/15), 166 So.3d 319, 323 (citing Saling v. City of New Orleans, 398 So.2d 1205 (La.App. 4th Cir.1981)).

. As NOFD points out in its brief, ‘‘[o]n the Form 1007, under the instruction ‘PURPOSE OF REPORT: (check all that apply)’, the single box that was checked states ‘medical only.’ No other box is checked, nor is there any other indication on the Form 1007 that the Claimant is requesting indemnity benefits in addition to medical payments in connection with his heart condition.”

. The NOFD paid medical and indemnity benefits in connection with Mr. Safford’s hand injury for ten years — from December 2004 to December 2014. He claims, in this case, that ■ he is entitled to be paid indemnity benefits in connection with his cardiac condition for ten years — from 2010 to 2020.

. In the Form 1008, Mr. Safford described his injury or disease as follows:
On November 7, 2009, Claimant was hospitalized for mitral - valve prolapse. Subsequently, Claimant was treated for- cardiac condition beginning on September 24, 2009. Claimant was ultimately diagnosed with atrial fibrillation by Bruce Iteld, M.D., and Vasanth Bethala, M.D. On September 28, 2010, Carl Lavie, M.D., confirmed Dr. Iteld and Dr. Be-thala’s diagnosis. Based on Dr. Lavie’s opinion, Claimant has received medical benefits effective June 11, 2010, to present.

. In its answer'to the complaint, the NOFD also asserted prescription as a defense,

. La. R.S. 23:1209 A provides as follows:
(1) In case of personal injury, including death resulting therefrom, all claims for payments shall be forever barred unless within one year after the accident or death the parties have agreed upon the payments to be made under this Chapter, or unless within one year after the accident a formal claim has been filed as provided in Subsection B of this Section and in this Chapter.
(2) Where such payments have been made in any case, the limitation shall not take effect until the expiration of one year from the time of making the last payment, except that in cases of benefits payable pursuant to R.S. 23:1221(3) this limitation shall not take effect until three years from the time of making the last payment of benefits pursuant to R.S. 23:1221(1), (2), (3), or (4).
(3) When the injury does not result at the time of or develop immediately after the accident, the limitation shall not take effect until expiration of one year from the time ■ the injury develops, but in all such cases the claim for payment shall be forever barred unless the proceedings -have -been begun within three years from the dáte óf, the accident. ■
(4)However, in all cases described-in Paragraph (3) of this Subsection, where the.proceedings have begun after two years from the date of the work accident but within three years from the date of the’ work accident, the employee may be entitled to temporary total disability benefits for a period not to exceed six months and the .payment of such temporary total disability benefits in accordance with this Paragraph only shall not operate to toll or interrupt prescription as to any -other benefit as provided in R.S, 23:1221.

. La. R.S. 23:1031.1 E provides as follows:
All claims for disability arising from an occupational disease are barred unless the employee files a claim as provided in this Chapter within one year of- the date that:
(1) The disease manifested itself.
(2) The employee' is disabled from working as a result of the disease.
(3) The employee knows or has reasonable grounds to believe that the disease is occupationally related.

. In the trial court, Mr. Safford additionally . argued that prescription was interrupted because if he had filed a claim for SEB benefits for his cardiac condition, the NOFD would have argued the claim was premature and that he was not entitled to concurrent pay *232 ments of SEB benefits for two separate conditions. In support, he cites NOFD’s right to offset its indemnity benefits obligation under La. R.S. 23:1225 and the holding in Rapp v. City of New Orleans, 95-1638, p. 47 (La.App. 4 Cir. 9/18/96), 681 So.2d 433, 456, that "[t]he exercise of the right of offset is a tacit acknowledgement of an entitlement to benefits that continues as long as the offset continues.”

. The WCJ also rejected Mr. Safford’s argument regarding offset. In so doing, the WCJ reasoned as follows:
Claimant argues that Employer was entitled to an offset pursuant to Louisiana Revised Statute 23:1225(c)(1)(a). Claimant concludes that had he requested indemnity for the cardiac problems, Employer would have denied the same. However, the flaw in this argument is that the claimant never did ask for indemnity benefits for his cardiac issues, which were unrelated to the hand injury claim or the payments therefore. .Revised Statute 23:1225, the offset statute, contemplates a worker having a second and unrelated claim and provides a remedy for the employer to harmonize indemnity payment of the separate claims. Mr. Safford was aware that he had the cardiac condition claim as early as 2009 and certainly no later than 2010, when Employer began providing medical benefits to him for the cardiac problems. The latest this claim for indemnity could have been filed would have been 2012.

. These statutory provisions are quoted elsewhere in this opinion. The WCJ noted in its reasons for judgment that Mr. Safford ac *233 knowledged that “by 2009 he was disabled from the heart condition and would meet all requirements of La. R.S. 23:1031.1.” His claim for indemnity benefits was not filed until 2015; thus, it is prescribed on its face,

. Summarizing the jurisprudence on this point, this court, in Scott, 03-0104 at p. 6, 851 So.2d at 1213-14, noted the following settled principles:
In keeping with the general intent of the Workers' Compensation Act, the jurisprudence has liberally construed the time limits for institution of a claim for benefits. Millican v. General Motors Corp., 34,207, p. 1 (La.App. 2 Cir. 11/1/00), 771 So.2d 234, 235, writ denied, 2001-0001 (La.3/23/01), 788 So.2d 426; See, e.g., Glascock v. Georgia-Pacific Corp., 25,677 (La.App. 2 Cir. 03/30/94), 635 So.2d 474, 479; Wesley v. Claiborne Elec. Co-op., Inc., 446 So.2d 857 (La.App. 2 Cir.1984); See generally, 14 H. Alston Johnson, Louisiana Civil Law Treatise: Workers’ Compensation Law and Practice § 384 (3d ed,1994). Thus, prescription statutes, including La, R.S. 23:1209(A), are construed in favor of maintaining rather than barring actions. See, e.g., Taylor v. Liberty Mut. Ins. Co., 579 So.2d 443, 446 (La.1991); Howard v. Trelles, 95-0227, p. 4 (La.App. 1 Cir.02/23/96), 669 So.2d 605, 607. As with any prescriptive period, prescription on workers' compensation claims may be interrupted or suspended. Millican, 34,207 at p. 3, 771 So.2d at 236; Krieg v. Krieg Bros. Terrazzo Co., Inc., 93-1065 at p. 3 (La.App. 3 Cir. 09/28/94), 645 So.2d 661, 664; Latino v. Binswanger Glass Co., 532 So.2d 960, 962 (La.App. 5 Cir.1988).

. In further support of his position, Mr. Saf-ford cites Norman, supra., which is discussed elsewhere in this opinion.

. NOFD also points out that its payment of medical benefits for Mr, Safford’s cardiac condition was insufficient to interrupt prescription on his indemnity benefits claim. See Pal v. Stranco, Inc., 10-1507, p. 12, n. 9 (La.App. 1 Cir. 8/3/11), 76 So.3d 477, 486 (citing Love v. East Jefferson General Hospital, 96-1558 (La.App. 1 Cir. 5/9/97), 693 So.2d 1245, 1247-48) (holding that "an employer's payment of medical benefits to a workers' compensation claimant does not interrupt prescription on a claim for . indemnity benefits.”); see also 14 H. Alston Johnson, III, LA. CIV. L. TREATISE, WORKERS' COMPENSATION LAW AND PRACTICE § 384 (5th ed.) (stating that “[t]he prescriptive periods for medical expenses and disability benefits are separate, and payment of a medical ex *235 pense does not interrupt prescription as to a claim for disability benefits,”).

. At the hearing, the WCJ inquired whether Mr. Safford was represented by counsel in connection with both his claims. Mr. Saf-ford’s present counsel replied that she was not retained until NOFD terminated Mr. Saf-ford’s SEB benefits for his hand injury.